II. A. GRAY v. J. R. JENKINS, J. I. JAMES and Wife, Lucy, et al.

(Filed 29 September, 1909.)

1. **Deeds and Conveyances — Reformation — Evidence Sufficient — Questions for Jury.**

The evidence to reform a written deed must be clear, strong and convincing, but when the testimony is sufficient to carry the case to the jury, as on an ordinary issue, the judge can only lay this down as a proper rule to guide the jury in their deliberations and it is for them to determine whether in a given case the testimony meets the requirements of this rule as to the degree of proof.

**2. Same—Positive Fraud.**

A grantor who can read and write, by merely signing a deed, is not necessarily, concluded from showing that, as between the original parties, it was induced by a positive act of fraud on the part of the grantee, and that he was deceived and thrown off his guard by the grantee's false statements and assurances designedly made at the time, and reasonably relied on by him.

**3. Same.**

Evidence is sufficient to go to the jury, in an action to reform a deed alleged to have been procured by fraud, tending to show that grantee and others went, about dark, to the house where grantor was and requested him to sign it, which he did without reading upon their representation that the description only covered a certain part of his lands, that it was a plain deed and such as they had previously agreed upon; that they urged his signature at once, stating they were in a hurry to leave; that he then signed it upon the assurance of one of them, in whom he had confidence, that the deed was as represented; and that in fact the deed conveyed more land than agreed upon.

APPEAL from *Cook, J.,* April Term, 1909, of PITT.

This action was originally tried before *Lyon, J.,* at the November Term, 1907.

The action was instituted by plaintiff, a subsequent purchaser of the land now in controversy, against J. R. Jenkins, mortgagee of this and other lands, and J. I. James, mortgagor and owner, and his wife, Lucy, *et al.,* to enforce a sale of the mortgaged land in a certain order, as required by the rights and equities of plaintiff as subsequent purchaser.

The mortgagee answered, setting up his indebtedness and the mortgage given to secure the same on all the land in controversy and other lands not embraced in plaintiff's deed. The mortgagor answered, and, among other things, alleged that the plaintiff's deed included more land than the agreement and contract between them authorized, and that the excess, to-wit, all that portion lying outside of the town of Oakley, was inserted in the instrument by reason of deceit and fraudulent representations on the part of plaintiff.

On issues submitted, the jury rendered the following verdict:

1. "Did defendants agree to sell and convey to plaintiff only that portion of their land which is located within the boundary lines of the town of Oakley?" Answer: "Yes."

2. "Were defendants induced to execute the deed of 16 November, 1905, containing that portion of their land lying outside the boundary lines of the town of Oakley, by the deceit and false and fraudulent misrepresentations of the plaintiff?" Answer: "Yes."

151—6

3. "Is the plaintiff the owner and entitled to the possession of the land described in the complaint?"  Answer: "All that part in the town of Oakley."

4. "Does the defendant J. I. James unlawfully withhold the possession of said land from the plaintiff?"  Answer: "Yes."

5. "What is the annual rental value of said land?"  Answer: "Thirty-six dollars."

On such verdict judgment was rendered reforming plaintiff's deed according to the facts established, and directing a sale in a given order, and from that judgment plaintiff appealed.  The appeal was dismissed as having been prematurely taken, on the ground that in a sale had pursuant to the decree it might turn out that the question at issue between plaintiff and the mortgagor would be 'immaterial and irrelevant.  149 N. C., 139. This opinion having been certified down, further proceedings were had, in which it was disclosed that all claims of the senior mortgagee were fully satisfied out of that portion of the lands not contained in plaintiff's deed, and thereupon it became necessary to determine the questions involved between plaintiff and defendant, the mortgagor, and presented in the pleadings, issues and verdict had in the original trial.  This result having been ascertained by formal judgment, the plaintiff again appealed.

*Jarvis & Blow* and *Moore & Long* for plaintiff.
*Moore & Dunn* and *Skinner & Whedbee* for defendant.

HOKE, J., after stating the case: The objection chiefly urged for error is the refusal of the court below to charge the jury "That the evidence in the case does not tend to prove facts sufficient to constitute fraud and deceit, and the jury is instructed, upon the whole evidence, if they believe it, to find the first and second issues 'No,'" but the objection, in our opinion, cannot be sustained.  While it is well established that in an action to reform a written deed the proof must be clear, strong and convincing, our decisions are to the effect that when the testimony is sufficient to carry the case to the jury, as on an ordinary issue, the judge can only lay this down as a proper rule to guide the jury in their deliberations, and it is for them to determine whether in a given case the testimony meets the requirements of this rule as to the degree of proof.  *Lehew v. Hewett,* 138 N. C., 6; *Cuthberson v. Morgan,* 149 N. C., 72.  This being the established principle, we think it clear that the prayer of plaintiff, above noted, was properly refused by the judge below.

It is true that in an action of this character the false statements must be such that they are reasonably relied upon by the

complaining party. It is also true that when an adult of sound mind and memory, and who can read and write, signs or accepts a formal written contract, he is ordinarily bound by its terms. *Floars v. Ins. Co.,* 144 N. C., 232. In such case it is very generally held that a man should not be allowed to close his mind to facts readily observable and invoke the aid of courts to upset solemn instruments and disturb and disarrange adjustments so evidenced, when the injury complained of is largely attributable to his own negligent inattention.

Older cases have gone very far in upholding defenses resting upon this general principle, and, as pointed out in *May v. Loomis,* 140 N. C., 357-358, some of them have been since disapproved and are no longer regarded as authoritative; and the more recent decisions, on the facts presented here, are to the effect that the mere signing or acceptance of a deed by one who can read and write shall not necessarily conclude as to its execution or its contents, when there is evidence tending to show positive fraud, and that the injured party was deceived and thrown off his guard by false statements designedly made at the time and reasonably relied upon by him. Some of these decisions, here and elsewhere, directly hold that false assurances and statements of the other party may of themselves be sufficient to carry the issue to the jury when there has been nothing to arrest attention or arouse suspicion concerning them. *Walsh v. Hall,* 66 N. C., 233; *Hill v. Brower,* 76 N. C., 124; *May v. Loomis,* 140 N. C., 350; *Griffin v. Lumber Co.,* 140 N. C., 514.

In *Walsh v. Hall,* one of the cases just cited, *Dick, J.,* delivering the opinion of the Court, said: "If the purchaser has received no covenants, and there is no fraud vitiating the transaction, he has no relief for defects or encumbrances against his vendor, for it was his own folly to accept such a deed, when he had it in his power to protect himself by proper covenants. But in cases of positive fraud a different rule applies. The law presumes that men will act honestly in their business transactions, and the maxim of *Vigilantibus non dormientibus jura subveniunt* only requires persons to use reasonable diligence to guard against fraud—such diligence as prudent men usually exercise under similar circumstances. In contracts for the sale of land purchasers usually guard themselves against defects of title, quantity, encumbrances and disturbance of possession by proper covenants; and if they do not use these reasonable precautions the law will not afford them a remedy for damages sustained, which were the consequences of their own negligence and indiscretion. But the law does not require a prudent man to deal with every one as a rascal and demand covenants to guard

against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract. There must be a reasonable reliance upon the integrity of men, or the transactions of business, trade and commerce could not be conducted with that facility and confidence which are essential to successful enterprise and the advancement of individual and national wealth and prosperity. The rules of law are founded on natural reason and justice, and are shaped by the wisdom of human experience, and upon subjects like the one which we are considering they are well defined and settled."

In *Griffin v. Lumber Co., supra,* the Court held as follows: "3. Before signing a deed, the grantor should read it, or, if unable to do so, should require it to be read to him, and his failure to do so, in the absence of any fraud or false representation as to its contents, is negligence, for the result of which the law affords no redress; but when fraud or any devise is resorted to by the grantee which prevents the reading or having read the deed, the rule is different." And like decision was made in *May v. Loomis, supra.*

Under these authorities, the judge below correctly ruled that the questions at issue should be submitted to the jury, the evidence bringing the case clearly within the principle stated. Among other things, the defendant (the plaintiff in the issue) testified that he had bargained with the plaintiff Gray concerning the land, and had agreed to sell and convey to him all that portion of the tract of land which lay within the boundaries of the town of Oakley for $600 and a store account amounting to about $20; that some time after that, when the defendant and his wife were at the house of one Williams, some time between sundown and dark, plaintiff came to them with a deed already prepared, and a justice of the peace with him, and in conversation defendant told him he was only selling the land in town, and plaintiff replied the deed only covered the land in town; "said it was only a plain deed, like we had agreed upon. There was no reading done. Gray (the plaintiff) handed me the deed; I read the deed to where it mentioned E. R. Mizell's corner, and I said to Gray, 'You have his initials wrong,' and he said, 'It makes no difference; it is nothing but a plain deed; I am in a hurry to get back to the store; there is no one there but Mr. Rogers.' I handed the deed to Mr. Whichard. I had confidence in him. I thought he would tell me the truth, or I would not have signed it. Whichard was looking over the deed, and the plaintiff said the same thing to him—that he was in a hurry." No one read the deed to witness. He further testified that he did not know the deed embraced any land outside of the town, or he would not have signed the deed.

Mrs. James, wife of defendant, gave similar testimony as to what took place about reading the deed at the house, of the execution, and further that she had agreed to sign a deed for the land within the town, and said so at the time, and she would not have agreed to the execution otherwise.

Mrs. Williams, sister of the defendant, testified that plaintiff Gray said it was not worth while to read the deed; that it was just a plain deed, containing what he bought.

Plaintiff further testified that, some time after executing the deed, he discovered that it was not restricted to the land within the town, but conveyed the entire tract to plaintiff, and same was worth $1,000 to $1,200. There was testimony on the part of plaintiff in denial of defendant's claim; but, for the purpose of the exception, the evidence of defendant must be taken as true, and, as stated, presents a case for the consideration of the jury.

The exceptions to the ruling of the courts in questions of evidence are without merit, and the judgment for defendant is affirmed.

No error.