J. B. McCALL v. TOXAWAY TANNING COMPANY.

(Filed 25 May, 1910.)

**Damages—Personal Injury—Written Release—Fraudulent Inducements—Calculated to Deceive—Evidence Sufficient.**

The defendant in an action to recover damages for personal injury alleged by reason of its negligence, sets up plaintiff's written release in defense. There was evidence for plaintiff tending to show that soon after the injury and when plaintiff was suffering from its effect, defendant's manager sent for him and induced the execution of the release by falsely representing that it was only a receipt necessary for defendant to have in order to collect insurance money due to it by reason of the

injury, and that it did not affect plaintiff's claim: *Held,* evidence sufficient to avoid the release, if the jury should find, under the circumstances, that the representations were calculated to and did deceive the plaintiff, whether he at the time had mental capacity to understand it or not; and it was error, therefore, to put the burden upon plaintiff of showing both actual fraud and mental incapacity.

APPEAL from *Joseph S. Adams, J.,* at August Term, 1909, of TRANSYLVANIA.

Civil action to recover damages for alleged negligent injury.

The plaintiff alleged, and offered evidence tending to show, that he had suffered physical injury caused by negligence of defendant company. Defendant denied negligence and pleaded a release of all claim for damages, signed by plaintiff, and offered evidence tending to support the defense. Plaintiff replied, alleging that this release was obtained by false and fraudulent statements as to its contents on the part of one J. S. Silverstein, vice president and general manager of defendant company, and alleged further, that at the time he signed the release he was in such a condition of bodily suffering and mental anxiety that he was not able to understand or comprehend the meaning or effect of same; and offered evidence tending to show the false representations, etc.

On the sixth issue, that as to obtaining the release by fraud, the court, among other things, charged the jury as follows:

"Before you can find the sixth issue 'Yes,' you must be satisfied by a preponderance of evidence that at the time it was signed the plaintiff did not understand what he was signing, and that he was misled by fraudulent misrepresentations of defendant, and that he was in such a condition from ignorance or mental and physical suffering that he was at the time incapable with reasonable care and caution to understand the contents of the paper.

"If, however, you are satisfied by the greater weight of the evidence, that the defendant, through its agent, Silverstein, represented to plaintiff that plaintiff was merely releasing an insurance company and was not releasing the defendant company, and that the plaintiff was in such a condition of suffering, from the effects of his wounds, that he could not comprehend the meaning of the writing, then you should find this issue 'Yes.'"

The jury rendered a verdict that plaintiff was wrongfully injured by defendant's negligence and damaged thereby $150; that plaintiff had released the claim, and said release was not procured by fraud. Judgment for defendant, and plaintiff excepted and appealed.

*George A. Shuford* and *Brown Shepherd* for plaintiff.
*Welch Galloway* for defendant.

Hoke, J., after stating the case: In *Gray v. Jenkins,* 151 N. C., 80, the last expression of the court on the question directly presented, the judge delivering the opinion said: "It is true that in an action of this character the false statements must be such that they are reasonably relied upon by the complaining party. It is also true that when an adult of sound mind and memory, and who can read and write, signs or accepts a formal written contract, he is ordinarily bound by its terms. *Floars v. Ins. Co.,* 144 N. C., 232. In such case it is very generally held that a man should not be allowed to close his mind to facts readily observable and invoke the aid of courts to upset solemn instruments and disturb and disarrange adjustments so evidenced, when the injury complained of is largely attributable to his own negligent inattention.

"Older cases have gone very far in upholding defenses resting upon this general principle, and as pointed out in *May v. Loomis,* 140 N. C., 357-358, some of them have been since disapproved and are no longer regarded as authoritative; and the more recent decisions on the facts presented here are to the effect that the mere signing or acceptance of a deed by one who can read and write shall not necessarily conclude as to its execution or its contents, when there is evidence tending to show positive fraud, and that the injured party was deceived and thrown off his guard by false statements designedly made at the time and reasonably relied upon by him. Some of these decisions, here and elsewhere, directly hold that false assurances and statements of the other party may of themselves be sufficient to carry the issue to the jury when there has been nothing to arrest attention or arouse suspicion concerning them." Citing *Walsh v. Hall,* 66 N. C., 233; *Hill v. Brower,* 76 N. C., 124; *May v. Loomis,* 140 N. C., 350; *Griffin v. Lumber Co.,* 140 N. C., 514.

This, we think, correctly states the doctrine relevant to the inquiry, and its proper application to the case requires that the plaintiff be awarded a new trial.

There was evidence on the part of plaintiff tending to show that plaintiff had been injured by defendant's negligence, and while he was still suffering pain and anxiety from his hurt, he was sent for by J. S. Silverstein, vice president and general manager of defendant company, and was induced to sign the release in question by false and fraudulent representations on the part of said Silverstein to the effect that the release in question was a receipt to enable Silverstein to obtain an amount of

DALE v. LUMBER COMPANY.

insurance arising by reason of the injury, and that same had no bearing on his claim for damages. If such representations were made under circumstances calculated to mislead plaintiff, and did mislead him, the effect under the doctrine referred to would be to avoid the release, whether plaintiff at the time had mental capacity to understand its purport or not.

The charge of his Honor, therefore, contained error to plaintiff's prejudice, in imposing on plaintiff more exacting conditions than the law requires. The jury were told, in effect, that in order to avoid the release it was incumbent on plaintiff to establish both actual fraud and mental incapacity.

For the error indicated, there will be a new trial on all the issues, and it is so ordered.

New trial.