FURST & THOMAS v. A. D. MERRITT ET AL.

(Filed 4 November, 1925.)

**1. Constitutional Law—Equity—Courts.**

Article IV, sec. 1, of our Constitution (1868), abolishing "the forms" of suits in equity, does not imply that the distinctions between law and equity are abolished, and the effect is to make them cognizable and triable in the same court.

FURST v. MERRITT.

**2. Same—Fraud in the Factum.**

Where a contract is avoided by fraud in the *factum*, it is void *ab initio* and no rights therein are acquired by the parties thereto.

**3. Same—Fraud in the Treaty.**

As affects innocent third persons, a contract that is fraudulent in the treaty is voidable in the equitable jurisdiction of the court as distinguished from one fraudulent in the *factum*, formerly cognizable only in a court of law.

**4. Same—Actions—Suits.**

Where fraud in the factum and fraud in the treaty in defense to an action upon contract are involved in the action, one relates to the execution of the contract and the other to the meeting of the minds into an agreement upon the subject-matter.

**5. Same—Issues—Appeal and Error.**

In an action upon contract where fraud in the *factum* and fraud in the treaty as affecting the rights of innocent third persons are both relied upon for defense, it is reversible error for the trial court to submit to the jury, the issue as to whether the instrument was procured by fraud and false representations, without observing the distinctions between the legal and equitable principles involved.

APPEAL by plaintiffs from *Calvert, J.,* at May Term, 1925, of ORANGE.

Civil action to recover of A. D. Merritt, principal, and E. S. Merritt and J. A. Fowler, sureties, the sum of $604.87 due by contract duly executed by A. D. Merritt and E. S. Merritt, but which J. A. Fowler alleges (1) that he never signed or authorized anyone to sign for him, as he only agreed to sign a recommendation; and (2) that, if his name appear as surety on the instrument in question, the authorization of his signature was procured by false and fraudulent representations.

Upon the issues thus raised by the answer and pleas of J. A. Fowler, the jury returned the following verdict:

"1. Was the signature of J. A. Fowler to said guaranty procured by fraud and false representation, as alleged in the answer? Answer: Yes.

"2. Is the defendant J. A. Fowler indebted to the plaintiffs, Furst and Thomas, and if so, in what amount? Answer: Nothing."

Judgment on the verdict releasing the defendant, J. A. Fowler, from liability under the contract, from which the plaintiffs appeal, assigning errors.

*Gattis & Gattis for plaintiffs.*
*Roberson & Whitfield and W. J. Brogden for defendants.*

STACY, C. J. The plaintiffs are engaged in business at Freeport, Ill. They authorized A. D. Merritt by contract to act as their "salesman," or exchange agent for their goods and products in Durham County; but before the final execution and acceptance of said agreement, plain-

FURST *v.* MERRITT.

tiffs required the said A. D. Merritt to furnish two sureties who would guarantee the faithful performance of the contract on his part. E. S. Merritt signed as one of the sureties.

There is a sharp conflict in the evidence as to the representations and circumstances under which J. A. Fowler's name was affixed to said instrument.

Touching the authorization of his signature, the defendant, J. A. Fowler, testified as follows:

"About five years ago I met J. Y. Merritt and his son, A. D. Merritt, in a buggy in a road near my home. They stopped and J. Y. Merritt asked me to sign a recommendation for his son so that he could work for some firm. I asked him if that was all it was, he said that was all it was, and that there would never be any hereafter to it. I said, if that is all it is, you can put my name down. I cannot read, and I relied on the statement of J. Y. Merritt that the paper was only a recommendation. J. Y. Merritt did all the talking and A. D. Merritt remained in the buggy beside him. I never knew the paper was a guaranty until I received a letter from plaintiffs terminating contract."

J. Y. Merritt testified for plaintiffs as follows:

"My son said he would have to get two sureties to sign the contract before he could go to work. He said he thought he would get Mr. Fowler and E. S. Merritt. We got in the buggy and started out to see them and met Mr. Fowler in the road. I told him that my son had a job and needed two sureties to sign the contract before he could go to work. I told him all about it. He said to go ahead and put his name down. I did all the talking. We did not have a pen so I waited until I got to Carrboro and then signed J. A. Fowler's name to the contract. I told Fowler that I thought there would be no hereafter."

Cross-examination: "I did not tell him it was a recommendation. . . . I told him it was a recommendation. . . . My son offered to read the contract to Fowler and he said it was not necessary. I do not know whether my son took the contract out of his pocket or not. He had it in his pocket. I told Fowler what the contract was, that it was a security."

A. D. Merritt, for the plaintiffs, testified as follows:

"We met Mr. Fowler in the road and my father did all the talking. I took the contract out of my pocket and offered to read it. He said it was no use, he could not read, and to go ahead and put his name down. My father told Fowler that there would be no hereafter to it. I do not think Fowler would have signed the contract if he had been told that it was an unlimited obligation to stand for my debts. I was to be exchange agent to sell the goods of plaintiffs' in Durham County. The contract was sent to me to be signed by myself and two guarantors."

It will be observed that the defendant, J. A. Fowler, pleads fraud in the *factum* as well as fraud in the treaty, in connection with the contract and agreement sought to be avoided. The difference between these two pleas becomes important in the instant case because of the presence and position of the plaintiffs, who contend that they are innocent third parties and in no way connected with the alleged fraud.

This difference has been obscured, to some extent at least, since the abolition in this jurisdiction of the distinctions between actions at law and suits in equity, but it should be remembered the abolition of the "forms of all such actions and suits" by the Constitution of 1868, Article IV, sec. 1, does not imply that the distinctions between law and equity have been abolished in North Carolina. The principles of law and the doctrines of equity remain the same and are practically unaffected by this constitutional provision, the only change wrought being in the method of administering them, and in some degree the extent of their application. *Waters v. Garris,* 188 N. C., p. 310, and cases there cited.

Prior to the adoption of the Constitution of 1868, the execution of an instrument brought about by fraud in the *factum* could be avoided in an action at law, because void, while a deed or contract induced by fraud in the treaty, either in the consideration of it, or in the false representation of some matter or thing collateral to it, could be relieved against only by a suit in equity, because only voidable. *McArthur v. Johnson,* 61 N. C., 317; *Gwynn v. Hodge,* 49 N. C., 168; *Canoy v. Troutman,* 29 N. C., 155; *Reed v. Moore,* 25 N. C., 310; *Logan v. Simmons,* 18 N. C., 13.

It was said by *Pearson, J.,* in *Devereaux v. Burgwin,* 33 N. C., p. 493, that, "under the plea of *non est factum,* if the execution of the deed is proven, it cannot be avoided in a court of law by proof that it was *procured to be* executed by means of falsehood and misrepresentation or other fraud. There must be fraud *in the factum;* as by substituting one paper instead of the one intended to be executed, so as to show that the party did not intend to execute the paper he was thus made to sign, seal and deliver as his deed."

In a court of law, the question was a naked one of deed or no deed— *factum* or *non est factum.* *Gant v. Hunsucker,* 34 N. C., 254.

Speaking of the distinction between the two kinds of fraud, in *Cutler v. R. R.,* 128 N. C., p. 480, *Furches, C. J.,* said: "Frauds affecting the validity of deeds are of two kinds—fraud in the *factum,* and fraud in the treaty. This distinction, though not as material now as formerly, is still material in some cases. *Medlin v. Buford,* 115 N. C., 260. Besides the importance of the distinction pointed out in *Medlin v. Buford,* it was important before the junction of legal and equitable jurisdiction

in the same court, to determine the jurisdiction, as courts of law had jurisdiction of frauds in the *factum,* but not of frauds in the treaty which were cognizable alone in courts of equity. This made it important to determine, before commencing the action, whether it was fraud in the *factum* or fraud in the treaty, as the proper court in which to bring the action depended on this distinction. And while the distinction is important, it is not of that importance that it formerly was, as one is sure now to get into the right court, if there is fraud whether in the *factum* or in the treaty."

While this distinction between void and voidable deeds is no longer important for the purpose of determining the jurisdiction of the court which shall hear the case, it is still highly important in its consequences to innocent third persons, "because nothing can be founded upon a deed that is absolutely void, whereas from those which are only voidable, fair titles may flow." *Somers v. Brewer,* 2 Pick., 191. Then, too, in certain instances, even in actions between the original parties and where the rights of innocent third persons are not involved, the rules of evidence may require an observation of the difference, depending on the relief sought, whether, for instance, the action be for reformation or cancellation. *Montgomery v. Lewis,* 187 N. C., 577; *Speas v. Bank,* 188 N. C., p. 528. And in some cases, the measure of damages may be different. *Griffin v. Lumber Co.,* 140 N. C., p. 519.

As a general rule, it may be said that fraud in the *factum* arises from a want of identity or disparity between the instrument executed and the one intended to be executed, or from circumstances which go to the question as to whether the instrument, in fact, ever had any legal existence, as, for example, where a grantor intends to execute a certain deed, and another is surreptitiously substituted in the place of it (*Nichols v. Holmes,* 46 N. C., 360), or where a blind or illiterate person executes a deed when it has been read falsely to him on his request to have it read (2 Blk. Com., 304; *Manser's Case,* 2 Coke's Rep., 3), or where some trick, artifice or imposition, other than false representation as to the meaning and content of the instrument itself, is practiced on the maker in effecting the execution of the instrument. *McArthur v. Johnson,* 61 N. C., 317; *Taylor v. Edmunds,* 176 N. C., 325; *Machine Co. v. McKay,* 161 N. C., 584; *Machine Co. v. Bullock,* 161 N. C., 1; *Garrison v. Machine Co.,* 159 N. C., 285; *Unitype Co. v. Ashcraft,* 155 N. C., 63; *Briggs v. Ins. Co.,* 155 N. C., 73; *Machine Co. v. Feezer,* 152 N. C., 516; *Bank v. Chase,* 151 N. C., 108; *Tyson v. Jones,* 150 N. C., 181; *Whitehurst v. Ins. Co.,* 149 N. C., 273; *Basnight v. Jobbing Co.,* 148 N. C., 350; *Hayes v. R. R.,* 143 N. C., p. 129; *Caldwell v. Ins. Co.,* 140 N. C., 100; *Dorsett v. Mfg. Co.,* 131 N. C., p. 259-260; *Printing Co. v. McAden,* 131 N. C., 178; *Cutler v. R. R.,* 128 N. C., 480; *Peebles*

v. *Guano Co.,* 77 N. C., 233. In all such cases, the instrument executed is different from what was intended, so that it cannot be said to be. the deed of the maker at all. No title passes under such an instrument—it is void—and no rights may be acquired thereunder even by innocent third parties, such as the plaintiffs in the present action.

If fraud in the *factum* be established, "it would be immaterial whether the plaintiff is an innocent party, since, the deed being a nullity, no rights could be asserted under it in favor of any person whomsoever"—*Shepherd, C. J.,* in *Medlin v. Buford,* 115 N. C., p. 269.

But where one executes the very instrument intended to be executed, though induced to do so by some fraud in the treaty, or some fraudulent representation or pretense, as, for example, where a person who can read the instrument, neglects to do so because of some false representation, and executes it under a misapprehension as to its contents, such person is bound by the instrument at law, though a court of equity, on sufficient showing and in proper instances, may relieve against it. *Medlin v. Buford,* 115 N. C., 260; *Dixon v. Trust Co., ibid.,* 274; *Currie v. Malloy,* 185 N. C., pp. 214-215; *Lanier v. Lumber Co.,* 177 N. C., 200; *Harvester Co. v. Carter,* 173 N. C., 229; *Leonard v. Power Co.,* 155 N. C., 10; *Dellinger v. Gillespie,* 118 N. C., 737; *School Com. v. Kesler,* 67 N. C., 448. In Sheppard's Touchstone the rule applicable is stated as follows: "If the party that is to seal the deed can read himself, and doth not, or, being an illiterate or a blind man, doth not require to hear the deed read or the contents thereof declared, in these cases, albeit the deed be contrary to his mind, yet it is good and unavoidable at law; but equity may correct mistakes, frauds," etc. See 1 Shep. Touch., 56 (30 Law Lib., 121).

In this connection, however, it should be observed that the duty to read an instrument or to have it read before signing it, is a positive one, and the failure to do so, in the absence of any mistake, fraud or oppression, is a circumstance against which no relief may be had, either at law or in equity. *Grace v. Strickland,* 188 N. C., p. 373; *Colt v. Kimball, ante,* p. 172, and cases there cited. There are none so blind as those who have eyes and will not see; none so deaf as those who have ears and will not hear. *Pittman v. Tob. Growers Asso.,* 187 N. C., 340; *Clements v. Ins. Co.,* 155 N. C., 57.

> "Who is so deafe or so blinde as is hee
> That wilfully will neither heare nor see?"—*John Heywood.*

This principle lies at the very foundation of all commercial dealings, and the integrity of contracts demands that it be rigidly enforced by the courts. *Potato Co. v. Jenette,* 172 N. C., 3.

But in an action between the original parties, if it be made to appear that one induced the other to execute a paper upon his representation as to its contents, and the representation turns out to be untrue and fraudulently made, the party who relied upon it, to his injury, if he acted with reasonable prudence in the matter, is not bound to him who deceived him into executing the paper. *Baldwin v. Tel. Co.,* 59 S. E. (S. C.), 67; *May v. Loomis,* 140 N. C., 350.

Speaking to this question in *Linington v. Strong,* 107 Ill., p. 302, *Dickey, J.,* delivering the opinion of the Court, said:

"The doctrine is well settled, that, as a rule, a party guilty of fraudulent conduct shall not be allowed to cry 'negligence,' as against his own deliberate fraud. Even where parties are dealing at arms' length, if one of them makes to the other a positive statement, upon which the other acts (with the knowledge of the party making such statement) in confidence of its truth, and such statement is *known to be false* by the party making it, such conduct is fraudulent, and from it the party guilty of fraud can take no benefit. While the law does require of all parties the exercise of reasonable prudence in the business of life, and does not permit one to rest indifferent in reliance upon the interested representations of an adverse party, still, as before suggested, there is a certain limitation to this rule, and, as between the original parties to the transaction, we consider that where it appears that one party has been guilty of an intentional and deliberate fraud, by which, to his knowledge, the other party has been misled, or influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable diligence and care."

And in *Walsh v. Hall,* 66 N. C., 233, *Dick, J.,* speaking to the same question, said:

"The law does not require a prudent man to deal with everyone as a rascal and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract. There must be a reasonable reliance upon the integrity of men or the transactions of business, trade and commerce could not be conducted with that facility and confidence which are essential to successful enterprise and the advancement of individual and national wealth and prosperity. The rules of law are founded on natural reason and justice, and are shaped by the wisdom of human experience, and upon subjects like the one which we are considering they are well defined and settled. If representations are made by one party to a trade which may be reasonably relied upon by the other party (and they constitute a material inducement to the contract) and such representations are false within the knowledge of the party making

them, and they cause loss and damage to the party relying on them, and he has acted with ordinary prudence in the matter, he is entitled to relief in any court of justice."

Fraud in the execution of an instrument, as distinguished from fraud in the representation, may be said to go to the issue of *non est factum,* while fraud in the agreement, *colloquium,* or negotiation, leading to the execution of the instrument, deals only with the treaty. The one relates to the execution of the memorial of the agreement, the other to the meeting of the minds preceding the execution of the instrument. *Currie v. Malloy, supra.*

Because of some apparent contrariety in its use, it may be well to note that the expression "fraud in the procurement," as used in some of the cases, relates to fraud in procuring the execution of the instrument, in which event, the reference is to fraud in the *factum,* while in others it is used in connection with fraud inducing the agreement, in which sense, its meaning has reference to fraud in the treaty. *Machine Co. v. Feezer, supra; Harvester Co. v. Carter, supra; Colt v. Kimball, ante,* p. 173, and cases there cited.

Fraud is the overreaching of one person by another, and yet this definition is as broad as the term itself. It has been said that fraud, actual and constructive, is so multiform as to admit of no rules or definitions. "It is, indeed, a part of equity doctrine not to define it," says *Lord Hardwicke,* "lest the craft of men should find a way of committing fraud which might escape such a rule or definition." *Oil Co. v. Hunt,* 187 N. C., p. 159.

Animadverting upon the inclusive nature and meaning of the word "fraud," *Dick, J.,* in *Walsh v. Hall,* 66 N. C., p. 239, said:

"No specific rule can be laid down as to what false representations will constitute fraud, as this depends upon the particular facts which have occurred in each case, the relative situation of the parties and their means of information. Examples are given in the books, which have established some general principles which will apply to most cases that may arise. If the falsehood of the misrepresentation is patent, and a party accepts and acts upon it with 'his eyes open' he has no right to complain. If the parties have equal means of information, the rule of *caveat emptor* applies, and an injured party cannot have redress if he fail to avail himself of the sources of information which he may readily reach, unless he has been prevented from making proper inquiry by some artifice or contrivance of the other party. Where the false representation is a mere expression of commendation, or is simply a matter of opinion, the parties stand upon equal footing, and the courts will not interfere to correct errors of judgment. Where a matter which forms a material inducement is peculiarly within the knowledge of one

of the parties, and he makes a false representation as to that fact, and the other party, having no reason to suspect fraud, acts upon such statement and suffers damage and loss, he is entitled to relief. Whenever fraud and damage go together, the courts will give a remedy to the injured party. Broom Leg. Maxims, 739." To like effect are the decisions in *Miller v. Mateer,* 172 N. C., p. 406; *Gray v. Jenkins,* 151 N. C., 80; *May v. Loomis,* 140 N. C., 350; *Hill v. Brower,* 76 N. C., 124.

In the instant case, the defendant's plea of fraud in the *factum,* or *non est factum,* if established, is sufficient to relieve him of liability on the instrument in suit, because, in this event, it is a nullity as to him. *Ex nihilo nihil fit.* "From nothing nothing comes."

But the defendant's plea of fraud in the treaty, even if established, will not avail as against the plaintiffs, innocent third persons in the present proceeding, because, in this event, the instrument is only voidable as between the original parties, and binding in the hands of innocent third persons. *Medlin v. Buford, supra.* The principle upon which this conclusion rests is that where one of two innocent persons must suffer from the act of a third, he who has enabled such third person to occasion the loss must sustain it. *Lickbarrow v. Mason,* 2 T. R., 70. Or, as stated in *R. R. v. Kitchin,* 91 N. C., 44, "where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes the confidence, or by his negligent conduct made it possible for the loss to occur, must bear the loss." *Bowers v. Lumber Co.,* 152 N. C., 607; *Bank v. Oil Mills,* 150 N. C., 722; *Rollins v. Ebbs,* 138 N. C., 145; *R. R. v. Barnes,* 104 N. C., 27; *Tarault v. Seip,* 158 N. C., p. 378.

The issue submitted to the jury, it will be observed, fails to make this distinction, and hence we are unable to say upon which plea the jury returned its verdict.

The two defenses—one valid, if established, the other unavailing in the instant suit—were submitted to the jury under a single issue, and the charge of the court, as sent up, is defective in that it fails to draw the distinction between the two pleas and thus falls short of a declaration and explanation of the law arising on the evidence. C. S., 564. Dealing with a similar exception in *Nichols v. Fibre Co., ante,* p. 7, *Connor, J.,* said: "While counsel may argue the law of the case to the jury, both plaintiff and defendant are entitled, as a matter of right, to have the judge declare and explain the law arising on the evidence. A failure to comply with the statute must be held as error." For like reason, a new trial must be awarded in the present case.

New trial.