Action to recover damages for personal injuries. Plaintiff was injured by a fall, caused by the breaking of a board in a scaffold upon which he was standing, while at work as an employee of defendant. The board broke because of defects therein, causing plaintiff to fall to the floor beneath, a distance of about eight feet. Plaintiff's leg was broken by the fall; his injuries are permanent.
Plaintiff alleges that such injuries were caused by the negligent failure of defendant, his employer, to furnish and provide for him a safe place to work.
Defendant denies liability for plaintiff's injuries, alleging that said injuries were caused by the act of a fellow-servant, for which defendant is not liable.
Defendant pleads in bar of plaintiff's recovery in this action his contributory negligence, and also a release, in writing, signed by plaintiff. Defendant alleges that plaintiff thereby, in consideration of a sum of money paid to him by defendant, fully released and discharged defendant from all liability on account of his injuries resulting from his fall.
Plaintiff alleges that the execution of the release by him as alleged by defendant was procured by fraud and misrepresentations, and that therefore said release is invalid. *Page 634 
Plaintiff demands judgment for the amount of his damages, to wit: $20,000, less the sum of $300 paid to him by defendant at the time the release was signed, this being the amount which plaintiff alleges was agreed upon as compensation for his loss of time, due to his injuries, for twelve weeks.
From judgment dismissing the action at the close of plaintiff's evidence, as upon nonsuit, plaintiff appealed to the Supreme Court.
The evidence offered by plaintiff tends to establish the allegations of his complaint, with respect to the cause and extent of his injuries.
On 30 May, 1925, plaintiff was at work for defendant as a carpenter. He was directed by his foreman to go up on a scaffold, which defendant had caused to be erected in the building upon which plaintiff was at work. While plaintiff and a fellow-workman were standing upon a board in this scaffold, engaged in the performance of their duties as employee of defendant, the board suddenly broke, causing plaintiff to fall a distance of about eight feet to the floor of the building.
The scaffold had been erected on the previous day, for the use of carpenters and other workmen employed in the building by defendant. Plaintiff had nothing to do with the selection of material for this scaffold, or with its construction. The board which broke while plaintiff was standing on it was selected and used in the construction of the scaffold by a fellow-workman of plaintiff, acting under the orders of his foreman. It had been used for some time about the building as a runway for wheelbarrows; it was old and dirty. The workman who selected the board and used it in the construction of the scaffold testified that it looked like a strong plank, but that he did not take much pains in selecting it. There were two knots on the under-side of the board, which was sixteen feet long, ten inches wide, and two inches thick. These knots were about the middle of the board, and extended continuously to its outer edges. The board broke right at the knots.
The scaffold containing this board was constructed by defendant as a place for its employees to stand while at work on the beams overhead. The defendant owed to its employees who were directed to work on this scaffold the duty to exercise due care in selecting materials reasonably suitable and safe for its construction. If defendant delegated to one of its employees the performance of this duty, it is responsible for the manner in which such employee performed the duty delegated to him; defendant is liable to plaintiff, if a breach of its nondelegable duty with respect to the place at which he was directed to work was the proximate *Page 635 
cause of his injuries. It is not relieved of such liability because its employee who selected the board and constructed the scaffold was a fellow-servant of plaintiff. Barkley v. Waste Co., 147 N.C. 585.
In Fowler v. Conduit Co., 192 N.C. 14, in the opinion written byJustice Brogden, it is said: "The principles of liability growing out of the use of scaffolds, platforms and walkways, as declared by the decisions of this Court, are as follows: (1) The employer must exercise ordinary care in selecting materials reasonably suitable and safe for the construction of such instrumentalities; (2) ordinary care must be exercised in the construction and inspection thereof; (3) if the employer delegated the construction of such instrumentalities to one of his employees, he is responsible for the manner in which this duty is discharged, and the employee using such instrumentality has a right to assume that the employer has exercised due care both in the selection of proper materials and in the construction of the instrumentality."
As the result of the injuries sustained by him, when he fell, plaintiff was confined to his bed in the hospital for five weeks, during which time he suffered great pain. After he was taken to his home, he was confined to his bed there for two weeks. He then got up and moved around in a chair. He was injured on 30 May, 1925; he went back to work with defendant, at reduced wages, on 10 September, 1925, and continued to work until he was discharged on 22 April, 1926. During this time, he found it necessary to use crutches; he now uses a stick to enable him to walk. His general health, which prior to his injury was good, is now greatly impaired. He suffers pain from his injuries almost constantly. Since he was discharged by defendant, he has been unable to secure employment. He testified, "Since that time I have had no other employment. I have asked several for work, but they say `No,' they don't want nobody. They see me on a stick, and I guess they don't want a man on a stick; they don't want me, and I guess nobody else does."
If the jury shall find from the evidence that plaintiff was injured by the negligence of defendant, as alleged in the complaint, and his recovery in this action is not barred by his contributory negligence, or by a valid release, plaintiff is entitled to recover of defendant as damages for his injuries a sum of money which the jury shall find is full and adequate compensation for all losses which he has sustained as the immediate and necessary consequences of his injuries. Wallace v. R. R., 104 N.C. 442.
The defendant offered no evidence at the trial, but at the conclusion of plaintiff's evidence moved for judgment as of nonsuit.
Plaintiff's evidence does not show, or tend to show, that he contributed by his own negligence to his injuries, and that he is thereby barred of recovery in this action should the jury find that he was injured by the negligence of defendant, as alleged in the complaint. *Page 636 
The plaintiff was taken to a hospital immediately after he was injured. With respect to the execution by him of the release relied upon by defendant as a bar to his recovery, plaintiff testified as follows: "On the fourth day after I went in there, Mr. Lewis came. I was asleep when he came in. When I woke up, he was standing at the foot of the bed, smiling. He walked around the side of the bed and said he had a paper he would like to have me sign, so that he could pay Dr. Bullock, as he had to pay him in advance. He did not ask me if I wanted to read the paper — he just asked me if I wanted to sign it. I told him I reckoned so, if I could. I could not raise anything but my head. I could not raise my body on account of the cast. Mr. Lewis said that signing the paper would not interfere with my suing the company in case I was injured for life. He made figures, showing for what I was signing. These figures show, `For Dr. Bullock, first aid, $35; room and board for five weeks, $192.50; charge for Dr. Bullock, $50, and my time, $300.' He said, `We have agreed to give you half-time for twelve weeks, as the job will be finished in that time; this amounts to $267.10, but we will make it $300.' He gave me a check for $300, and I signed the paper. I relied upon his representation as to what the paper said. I did not read it. I had no money; I had to pay rent and support my family. I am a married man. I knew what I was doing when I signed the paper. My mother was in the room when Mr. Lewis came in. She remained there. Two nurses came in and signed the paper as witnesses. My wife was not there. Only my mother, the two nurses and Mr. Lewis were in the room with me when I signed the paper. I do not know whether I was under the influence of drugs or not. I had taken some the night before. They had been giving me drugs all along. I know what Mr. Lewis told me I was doing when I signed the paper and took the check for $300. They did not read the release to me, nor did they offer to read it. Mr. Lewis asked me about the nurses. He called them to come into the room. They signed the paper and went out. I asked Mr. Lewis, in case I was ruined for life, what would happen. He said that the paper I had signed would not interfere with my suing for damages. I believed what he said."
"A release executed by the injured party, and based on a valuable consideration, is a complete defense to an action for damages for the injuries, and where the execution of such release is admitted or established by the evidence, it is necessary for the plaintiff to prove the matter in avoidance." Aderholt v. R. R., 152 N.C. 411. The mere execution of a release by the injured party, however, does not preclude him from recovery of damages resulting from injuries caused by the negligence of the party relying on it, when there is evidence tending to show positive fraud, and that the injured party was deceived and thrown off his guard *Page 637 
by false statements designedly made at the time, and reasonably relied upon by him. "There are decisions," says Hoke, J., in the opinion for the Court in Gray v. Jenkins, 151 N.C. 80, "here and elsewhere, directly holding that false assurances and statements of the other party may of themselves be sufficient to carry the issue to the jury when there has been nothing to arrest attention or arouse suspicion concerning them. Walsh v. Hall,66 N.C. 233; Hill v. Brower, 76 N.C. 124; May v. Loomis,140 N.C. 350; Griffin v. Lumber Co., 140 N.C. 514."
It is the policy of the law, as evidenced by many decisions of this Court, in order to protect the weak from oppression by the strong, and to give ample assurance that justice shall be done to those whose need is great, to scrutinize releases executed by injured employees and relied upon by employers to bar recovery of adequate sums of money as damages resulting from injuries caused by negligence.
In Bean v. R. R., 107 N.C. 732, Merrimon, C.J., affirming the judgment of the Superior Court in favor of plaintiff, notwithstanding a release signed by him, says: "Granting that there was no positive fraud on the part of defendant or its agents (none was alleged), there was evidence to prove, and the jury found, under appropriate instructions from the court, not objected to, that the plaintiff executed the release by mistake, occasioned by his ignorance, physical pain, mental anxiety, and lack of capacity, under the circumstances, to understand and comprehend the nature and purpose of such release. . . . As we have said, the plaintiff does not allege, in the reply, positive fraud of the defendant, nor mutual mistake, nor undue influence, nor simple weakness of understanding. He alleges such a combination of facts and circumstances, and produces evidence to prove the same, as show such mistake and surprise on his part as entitled him to have the release declared inoperative and void."
In Boutten v. R. R., 128 N.C. 337, a judgment dismissing the action as in case of nonsuit was reversed. In the opinion of this Court it is said: "There is both allegation and proof that the plaintiff is ignorant and unlettered, unable to read or sign his name; that the paper was not read over to him; that he was in physical suffering from his wounds; that the man at whose house he was staying during his confinement from his wounds told him the paper was to enable him to get his pay from the railroad company for his taking care of the plaintiff while wounded, and that under the impression it was a paper of that kind, he signed it, but he did not know that it was a release of his claim for damages against the company, and that no consideration was ever paid to him to give such release. . . . It does not appear that even the board and nurse here have been paid, but if they had been, such payments might be taken into consideration in adjusting a reasonable sum to be paid to plaintiff *Page 638 
for his injuries if sustained by the negligence of defendant. Payment of the nurse's bill, had it been shown, would have been no recompense to plaintiff for injuries of the nature here in evidence."
In McCall v. Tanning Co., 152 N.C. 649, a new trial was ordered by this Court for error in an instruction to the jury upon the issue involving the allegation that a release relied upon by defendant was procured by fraud. In the opinion it is said: "There was evidence on the part of plaintiff tending to show that plaintiff had been injured by defendant's negligence, and that while he was still suffering pain and anxiety from his hurt, he was sent for by J. S. Silverstein, vice-president and general manager of defendant company, and was induced to sign the release in question by false and fraudulent representations on the part of said Silverstein to the effect that the release in question was a receipt to enable Silverstein to obtain an amount of insurance arising by reason of the injury, and that same had no bearing on his claim for damages. If such representations were made under circumstances calculated to mislead him, the effect under the doctrine referred to would be to avoid the release, whether plaintiff at the time had mental capacity to understand it or not."
In Brazille v. Barytes Co., 157 N.C. 454, plaintiff recovered damages for personal injuries caused by the negligence of defendant. Among other defenses, defendant relied upon a release executed by plaintiff. It excepted to the refusal of the court to instruct the jury to answer the issue as to fraud in obtaining the release in the negative. Upon its appeal to this Court, the assignment of error based upon this exception was not sustained. In the opinion it is said: "There was evidence tending to show fraud, which was sufficient, if believed by the jury, to justify the finding of the issue in the affirmative. There was evidence that the plaintiff's wife and brother were not permitted to be present in the office when the release was signed, but were kept outside in the cold; that the release was executed within a few days after the plaintiff left the hospital and while he was suffering great pain and mental anxiety occasioned by his injuries; that plaintiff was ignorant and unable to write, blind, and his hearing badly impaired; that, as he testified, he thought he was giving a receipt for his wages; that he had no friends or counsel to advise him; that the consideration paid was $372; whereas the jury found that $4,850 was reasonable and just compensation.
"These and other circumstances were sufficient to carry the case to the jury. Hays v. R. R., 143 N.C. 128; Dorsett v. Mfg. Co., 131 N.C. 259;Bean v. R. R., 107 N.C. 746."
In Styron v. R. R., 161 N.C. 78, defendant excepted to the refusal of the court to allow its motion at the close of all the evidence for nonsuit. Defendant relied upon a release executed by plaintiff in *Page 639 
consideration of the sum of twenty-five dollars. The jury found that plaintiff was injured by the negligence of defendant, and assessed her damages at $325. This Court found no error in the trial. In the opinion it is said: "The plaintiff testified that she is ignorant and cannot read or write; that the release was not read over to her; that the officials told her she had no claim against the town, and that she made her mark; that $6 of the $25 was paid to the doctor, and that she received only $6 in cash, and that $2 went to pay some money that had been loaned to her."
In Causey v. R. R., 166 N.C. 5, defendant earnestly insisted that there was no evidence of fraud or undue influence. This Court found no error in the trial in the Superior Court, at which judgment was recovered by plaintiff for damages assessed by the jury for personal injuries caused by defendant's negligence. The jury found that plaintiff had sufficient mental capacity to understand the nature and effect of the release executed by him, but that the execution of said release was procured by fraud and undue influence of defendant. Justice Allen, in the opinion of the Court, says: "No presumption of fraud arises from the relation of employer and employee, but it is recognized by the courts that the employer has great influence in determining the conduct of the employee, and may use it to his injury. King v. R. R., 157 N.C. 63." He says: "We have, then, a full release executed upon the payment of less than one-third of the amount agreed to be paid, and when the most important element of damages was not then taken into consideration — mental and physical suffering and reduced capacity. It was executed by an employee, who was at the time suffering mentally and physically from his injury, and who wished to retain his place with the defendant, and when no one was with him except the claim agent of defendant, who made contradictory statements about his meeting with the intestate. It would seem that one of two conclusions must follow, if the jury accepted this evidence: that the intestate did not have sufficient mind to execute a release, or that he was improperly influenced. The jury has adopted the latter solution, and in our opinion there was evidence to support it."
In Knight v. Bridge Co., 172 N.C. 393, the rule with respect to the adequacy of the consideration for a release of a claim for damages is stated as follows: "The owner of tangible property, or of a claim for damages, may give it away or sell it for less than its value, and the contract is valid in the absence of fraud, undue influence, or oppression; but if the contract is attacked as fraudulent, the inadequacy of consideration is evidence of fraud, and if gross, is alone sufficient to carry the case to the jury on the issue of fraud."
In McMahan v. Spruce Co., 180 N.C. 637, it was held, upon appeal to this Court, that the motion for nonsuit in the Superior Court was *Page 640 
properly overruled. There was evidence of fraud in procuring the release, and of a want of consideration. "There was actual misrepresentation here, notably as to the plaintiff's condition, which was calculated to mislead him and cause him to surrender his right of recovery for a mere song, almost nothing, as compared with the extent of his injuries and his real damages."
Upon the authority of these and of other decisions of this Court, it must be held that the evidence offered by plaintiff, to show matters in avoidance of the release, should have been submitted to the jury.
As to whether plaintiff in this action is precluded from attacking the release, because, although able to read it, he failed to do so, or because he failed to require that it be read to him, should be submitted to the jury as a circumstance to be considered by them in determining their answer to the issue. A person who can do so is ordinarily required to read a paper before signing it, or, if he cannot read, he is required to request that it be read to him. Colt v. Kimball, 190 N.C. 169. This rule does not apply, however, in case of positive fraud, or false representation, made by another party, by which the person signing the paper is lulled into security or thrown off his guard and prevented from reading it and induced to rely upon such false representation or fraud. Nor does it apply in such cases where the person signing the paper is unable to read, and fails to request that it be read to him, when the other party who relies upon the paper states its purpose and effect, and the person sought to be bound thereby reasonably relies upon such statement, and therefore fails to request that it be read to him. The exceptions to the rule have been recently discussed by Clarkson, J., with full citation of authorities, in his opinion in Oil and Grease Co. v. Averett, 192 N.C. 465.
There was error in allowing defendant's motion for nonsuit at the close of plaintiff's evidence, and in dismissing the action. The judgment is
Reversed.