MRS. ANNIE L. ROBERSON v. D. C. WILLIAMS, JR.

(Filed 13 October, 1954.)

**1. Contracts § 1—**

Ordinarily, where persons *sui juris* enter into a lawful contract the law will not inquire into whether it is good or bad, wise or foolish, but such inquiry may be permitted when the execution of the contract is induced by the fraud of one of the parties thereto.

**2. Fraud § 1—**

Fraud is not defined lest the craft of men should find ways of circumventing or escaping a rule or definition, but generally fraud embraces all acts, omissions, or concealments involving a breach of legal or equitable duty resulting in damage, or the taking of undue or unconscientious advantage of another.

**3. Fraud § 4—**

It is not required that defendant have actual knowledge of the falsity of the representations made by him if he makes such representations with reckless indifference as to their truth or falsity and with intent that the other party should rely upon them.

**4. Fraud § 12—Evidence of fraud held sufficient to be submitted to the jury.**

Plaintiff's evidence was to the effect that defendant, a stranger, sought her out and repeatedly attempted to purchase timber rights on a tract of land owned by her, that plaintiff advised him she could not sell because she had not been on the land and had no knowledge of the amount of timber thereon, that thereafter defendant came to see plaintiff in company with a timber cruiser who stated positively his estimate of the amount of timber on the land, that defendant stated he would pay her full market value for this amount of timber, that plaintiff, in reliance on such representation, executed timber deed at the stipulated price, and that within a short time thereafter defendant sold the timber rights for almost double the price paid plaintiff and that the amount of timber was more than three times the amount estimated by defendant's cruiser and worth from two and one-half to three and one-half times the price paid by defendant. *Held:* The evidence was sufficient to be submitted to the jury on the issue of whether defendant procured the execution of the timber deed through fraud.

**5. Fraud § 5—**

The failure of plaintiff to make inquiry which would have disclosed the falsity of defendant's representations will not preclude plaintiff from maintaining an action for fraud in those instances in which there is nothing which would have put a reasonably prudent man upon inquiry. The law does not require a prudent man to deal with everyone as a rascal.

PLAINTIFF'S appeal from *Morris, J.,* March Term, 1954, MARTIN County Superior Court.

Plaintiff seeks to recover damages she alleges she sustained in the sale to the defendant of timber rights which she was induced to make by reason of the false and fraudulent representations made to her by the defendant with reference to the amount and value of the timber sold. She alleges in substance:

(1) She was the owner of a described tract of timber lands containing about 110 acres and located about 14 miles from her home. She had never seen the land and knew nothing of the amount or value of the timber.

(2) Defendant, whom she had not known, sought out the plaintiff and attempted to purchase her timber rights. He stated he would pay her a good price and the full market value. She declined to sell, giving as her reason that she did not know either the amount or value of her holdings. The defendant repeated his visits and efforts to make the purchase. Each time the plaintiff refused to sell, repeating the original reason given.

(3) On 31 October, 1952, the defendant again appeared at the home of the plaintiff and brought with him a man whom he claimed to be an expert timber cruiser with many years of experience. The cruiser stated he had thoroughly cruised the timber and that there was not in excess of 250,000 feet. Defendant stated that $10,000 was its highest market value.

(4) The plaintiff relied upon the statements made by the defendant, was deceived by them as to the amount and value of her timber, that she was induced to sell for $10,000 because of statements made to her by defendant and the cruiser, and upon the payment to her of $10,000, executed and delivered a deed to the defendant.

(5) At the time of the execution of the deed the tract of land contained not less than 700,000 feet of timber and was worth not less than $25,000.

(6) The representations of the defendant that the timber cruised only 250,000 feet and was worth only $10,000 were false and fraudulent, were known to be so by the defendant when he made them. They were made for the purpose of deceiving the plaintiff and did deceive her to her damage in the sum of not less than $15,000.

(7) The defendant, on 19 December, 1952, sold and conveyed to Barrow Manufacturing Co. the timber rights which he had purchased from the plaintiff and he received from Barrow Manufacturing Co. the sum of $19,000 as the purchase price.

(8) Since the defendant has conveyed the timber rights to an innocent purchaser, that plaintiff's only remedy is against the defendant for damages.

The defendant answered, admitting the purchase for $10,000, but denying that he made any statements about the amount or value of the timber.

On the trial the plaintiff testified:

"I am a widow and I live in Williamston, 14 miles from the timber lands. I had never been on the land, had never seen it, and had never had the timber cruised. On his first visit to my house, Mr. Williams, whom I had not previously known, brought with him Mr. Sparrow, whom I had known. I told them I did not want to sell because I did not know what I had. Mr. Williams came back shortly thereafter and again I told him I did not know what to decide about selling because I did not know the amount or value of the timber. The first time Mr. Sparrow came to my house Mr. Williams was with him. Mr. Sparrow had kept inching the price up, and asked me if I would talk with Mr. Williams again. I agreed to do so. Mr. Williams kept asking me what I wanted for the timber several times, and I told him I did not know what there was, and he told me he would pay me for it at the market price, a good market price. Ten thousand dollars was the last figure that I got on the

price. They commenced low and kept creeping. I don't know whether I saw Mr. Williams again before 31 October, 1952, or not.

"On 31 October, 1952, Mr. Williams, Mr. Sparrow and another man came to my house. They wanted to know if I had decided to sell. I told them I couldn't sell until I knew what I had. Mr. Williams had his cruiser with him. I do not know his name for they did not introduce him. Mr. Sparrow asked him how much did it cruise and he said, 250,000 feet. He told me he was sure, and after thinking for a few minutes I told them that if that was all there was, then it would be all right, for I thought they told me right and I depended on what they said. Mr. Williams said he had the money with him and that he had it ready and wanted me to go down to the office and have a deed written up. It was right at dinner time and I told them to wait until I fixed dinner, but before I could do so they were calling me to come down. When I got there, the deed was written and everything. I signed the deed and Mr. Williams paid me $10,000 in cash in $100 bills. I agreed to the price of $10,000 after the cruiser told me there was 250,000 feet. I did not have the timber cruised until Mr. Barrow started cutting. Then was when I found out there was more timber than I knew."

On cross-examination, the plaintiff testified: "I told them I wanted a few days to study it over and to see my brother. No deed had been drawn. My brother adjoins one of my farms but not the one on which this timber was located. My brother told me that he did not know anything about it and that he didn't know how much timber was there."

Edward Stewart, Jr., testified: "I am a consulting forester; have been in this type work for 17 years. I offer professional forestry service to the general public and about 80 per cent or 90 per cent of my work is the appraising of timber and estimating it. I received my degree in Forestry in 1937, and since that time I have been with the U. S. Forestry Service, the Department of Agriculture, working in various regions of the United States, and in World War II, I was with the Military Government Forestry in occupied countries and in complete charge of all forestry industries in the occupied countries. Since the War I have offered my services to the public and my clients are mostly lumber companies and pulp companies."

Upon this evidence the court found the witness to be an expert in the estimation of timber.

"On July 7, 1953, I made a cruise of the timber on the Roberson Tract of land in Robersonville, N. C., from a description furnished me, this being the same description as the one set out in the complaint. . . . the boundaries were well defined, on two sides there were natural boundaries, one a branch and the other a field, and the other boundaries had been bushed out. . . . From my cruise I found 657,000 feet of pine, 120,000

feet of gum, and 5,000 feet of poplar, and the fair market value of such timber as of October 31, 1952, was $35 per thousand for pine, $25 for gum, and $30 for poplar. In dollars and cents the fair market value . . . or total value of $25,935.00."

Luther Hardison testified: "I have been in the business of estimating timber for 20 or 25 years and I live in Williamston. The nature of my work is estimating and buying timber. . . . I am familiar with the lands of Mrs. Roberson and I went on one tract with Mr. Edward Stewart. . . . Each of us made our own individual cruise and when we got back together we were about 20 or 25,000 feet apart. He told me I was a little low and I told him he was a little high. We split it up and made one report. We had made an estimate of both the timber standing and the timber that had been cut. The figures were: Pine 651,000 feet, gum 120,000 feet, and poplar 5,000 feet. The fair market value of that timber at the time was $45 to $50 per thousand, the gum and poplar being the same price as the pine."

Deed for the timber, dated 31 October, 1952, from the plaintiff to the defendant and recorded in Book J-5, p. 293, Martin County Registry, and the deed dated 19 December, 1952, from D. C. Williams, Jr., to Barrow Manufacturing Co., recorded in Book J-5, p. 384 of the Martin County Registry, were introduced.

The following stipulation was entered into: "Counsel stipulate and agree that the deed from Mrs. Annie L. Roberson to D. C. Williams, Jr., dated October 31, 1952, and recorded in Book J-5, p. 293, of the Martin County Registry, consideration $10,000.00, contains the same description and is the same land that appears in deed from D. C. Williams, Jr. to Barrow Manufacturing Company, dated December 19, 1952, and recorded in Book J-5, p. 384, of the Martin County Registry, consideration $19,000.00."

At the conclusion of plaintiff's testimony, defendant made a motion for judgment as of nonsuit. The motion was granted and judgment signed, from which the plaintiff appealed.

*Critcher & Gurganus for plaintiff, appellant.*
*Lucas, Rand & Rose and Clarence W. Griffin for defendant, appellee.*

HIGGINS, J. The sole question presented here is whether the evidence of actionable fraud taken in the light most favorable to the plaintiff was sufficient to go to the jury. (If the evidence was insufficient, the judgment of nonsuit should be affirmed.) If it was sufficient, the case should go back for submission to the jury.

Ordinarily, when parties are on equal footing, competent to contract, enter into an agreement on a lawful subject, and do so fairly and honor-

ably, the law does not permit inquiry as to whether the contract was good or bad, whether it was wise or foolish. However, under certain conditions, when fraud by one party is an inducement which influences the other party to contract to his prejudice, the law does permit inquiry.

"Fraud has no all-embracing definition. Because of the multifarious means by which human ingenuity is able to devise means to gain advantages by false suggestions and concealment of the truth, and in order that each case may be determined on its own facts, it has been wisely stated 'that fraud is better left undefined,' lest, as *Lord Hardwicke* put it, 'the craft of men should find a way of committing fraud which might escape a rule or definition.' *Furst v. Merritt,* 190 N.C. 397 (p. 404), 130 S.E. 40. However, in general terms fraud may be said to embrace 'all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another, or the taking of undue or unconscientious advantage of another.' 37 C.J.S., Fraud, Section 1, p. 204." *Vail v. Vail,* 233 N.C. 109, 113, 63 S.E. 2d 202.

"It is not always necessary in order to establish actionable fraud that a false representation should be knowingly made. It is well recognized with us that under certain conditions and circumstances if a party to a bargain avers the existence of a material fact recklessly or affirms its existence positively when he is consciously ignorant whether it be true or false he must be held responsible for a falsehood. Plaintiff must establish either positive fraud or that she was deceived and thrown off her guard by false statements designedly made at the time and that such statements were reasonably relied upon by her. *Butler v. Fertilizer Works, supra* (193 N.C. 632). False assurances and statements of the other party may, of themselves, be sufficient to carry the issue to the jury when there has been nothing to arrest the attention or arouse suspicion concerning them. *Butler v. Fertilizer Works, supra; McCall v. Tanning Co.,* 152 N.C. 648, 68 S.E. 136; *Whitehurst v. Ins. Co., supra* (149 N.C. 273); *Bank v. Yelverton,* 185 N.C. 314, 117 S.E. 299." *Ward v. Heath,* 222 N.C. 470, 473, 24 S.E. 2d 5.

In this case the plaintiff, a widow, was the owner of a tract of timber that she had never seen; it was located 14 miles from her home. The defendant sought out the plaintiff for the purpose of buying the timber rights. The permissible inference is that he knew the timber and he sought out its owner for the purpose of negotiating a deal. First off, he was met with the statement that she had never seen it, had never been on the land, and did not know the amount or value and did not want to sell for that reason. At every meeting, according to the evidence, she repeated lack of knowledge sufficient to enable her to make a contract. Finally, the defendant, on 31 October, 1952, again appeared at plaintiff's home and with him a Mr. Sparrow, who had been somewhat active in

attempting to close the deal. Also with them was another man whom they did not introduce other than as a timber cruiser. He was called on by Mr. Sparrow in the presence of the defendant, and answered by saying that the timber cruised 250,000 feet, and on being questioned by the plaintiff as to whether he was sure, replied that he was. Under these circumstances the jury may infer that the defendant took with him this cruiser for the purpose of meeting plaintiff's objection to the sale on account of her lack of knowledge. It is a permissible inference that defendant expected to overcome plaintiff's objection to a sale, for he had with him $10,000 in one-hundred-dollar bills. The defendant had assured plaintiff he would pay a good price, the full value of her timber, and that $10,000 was full value. Plaintiff replied that if 250,000 feet was all there was, she would sell for $10,000. The deal was closed somewhat hurriedly, according to the evidence. The deed was prepared before plaintiff could serve her dinner. She was paid $10,000 in one-hundred-dollar bills. She executed the deed by which title passed to the defendant.

A cruise of the timber showed 776,000 feet, more than three times the amount, and according to the evidence worth from $25,935 to $38,000, or two and one-half to three and one-half times what she was told it was worth. The defendant sold his purchase in 49 days for $19,000, or 90 per cent profit. Did he pay her full value? Had his cruiser cruised, or did he fix up a story to satisfy the widow's lack of knowledge and get her property for less than half its value?

If the evidence is to be believed, the statements as to the amount and value were false. They were made under circumstances which would permit the jury to infer the purpose was to deceive. They were relied on by the plaintiff. She was induced to part with her property for less than half its value. These are some of the inferences which a jury might draw from the evidence.

It would have been wiser, of course, for the plaintiff to have had a cruise made before, rather than after the sale. But the evidence discloses that she had inquired of her brother, who had advised her that he did not know anything about the timber. It was 14 miles away. She knew nothing about it. She relied on what the defendant and his companion told her.

In *Gray v. Jenkins*, 151 N.C. 80, 65 S.E. 644, this Court said: "The law does not require a prudent man to deal with everyone as a rascal and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract; that there must be a reliance on the integrity of man or else trade and commerce could not prosper."

In *Machine Co. v. Bullock*, 161 N.C. 1, 76 S.E. 634, this Court said: "We are not inclined to encourage falsehood and dishonesty by protecting

one who is guilty of such fraud on the ground that his victim had faith in his word and for that reason did not pursue inquiries that would have disclosed the falsehood."

Whether fraud was committed in this case is not for us to decide. We do decide, however, that there is sufficient evidence to require its submission to the jury.

Reversed.