BONNIE GREEN COWART v. DOUGLASS M. HONEYCUTT.

(Filed 9 May 1962.)

1. **Torts § 7; Pleadings § 8½—**
    A release defeats plaintiff's entire cause of action and therefore a plea of release is a plea in bar.

2. **Pleadings § 8½; Trial § 8—**
    The trial court has the discretionary power to order that a plea in

bar to plaintiff's entire right to maintain the action be tried prior to the trial on the merits.

**3. Appeal and Error § 3—**

Adjudication that the release for personal injury signed by plaintiff was obtained by fraud does not prejudice defendant in trying the cause on its merits on the issue of negligence, and therefore an appeal taken prior to the trial on the merits from the adjudication that the release was void, is premature and must be dismissed.

**4. Appeal and Error § 2—**

Even though an appeal is dismissed as fragmentary and premature, the Supreme Court, in the exercise of its discretionary power, may express an opinion on the question sought to be presented.

**5. Torts § 7; Fraud § 1—**

A release from liability is vitiated by fraud in the same manner as any other instrument, and fraud vitiates the entire instrument and not merely that part to which the fraudulent misrepresentation relates.

**6. Torts § 7; Fraud § 11—**

Inadequacy of consideration, if not gross, is alone insufficient to set aside an instrument for fraud, although it is properly considered with other evidence upon the issue, but if the inadequacy of consideration be so gross as to shock the moral sense, it may alone be sufficient to warrant the submission of the issue to ·the jury.

**7. Torts § 7; Fraud § 5—**

The failure of a party to read an instrument will not preclude him from attacking the instrument for fraud if he is prevented from reading it by some artifice or misrepresentation which would be relied upon by a reasonably prudent man under the circumstances, since the law does not require a person to deal with everyone as a rascal.

**8. Same; Fraud § 11— Evidence held sufficient to raise the issue of whether release was procured by fraud for determination of jury.**

Plaintiff was a passenger in a car driven by her husband and was injured when defendant drove his car into the rear thereof. The evidence tended to show that the husband gave a postdated check for the repairs to his car, that the adjustor for defendant's insurer thereafter procured plaintiff and her husband to sign a release upon payment of the amount the husband had incurred for the repairs and the care and hospitalization of plaintiff, by representing that the release was solely for the husband's expenses and did not affect plaintiff's claim for damages for personal injuries. The evidence further tended to show that plaintiff had finished the fifth grade at school but could not read well. *Held:* Defendant's contentions that although plaintiff's signature to the release was obtained by a false representation of a material fact which was relied upon by plaintiff, plaintiff, as a matter of law, was required to read the instrument before signing it and was not justified in relying upon the representation, is untenable, since whether a reasonably prudent

man, under similar circumstances, would have signed the instrument without reading it, is a question for the determination of the jury.

SHARP, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Patton, J.,* October 1961 Civil Term of MECKLENBURG.

Action *ex delicto* instituted by plaintiff in January 1960 to recover damages for personal injuries sustained on 28 December 1956, while riding as a passenger in an automobile owned and driven by her husband, and allegedly caused by the negligence of defendant in driving his automobile into the back of her husband's automobile standing in a line of traffic at a street intersection in the city of Charlotte.

Defendant in his answer denied he was negligent, and by way of further answer and defense alleged plaintiff on 22 February 1957 had executed a release of all claims and damages suffered by her in the collision, and he pleaded such release in bar of plaintiff's action. Included in defendant's answer was a cross-action against plaintiff's husband, John W. Cowart, as an alleged joint tort-feasor for contribution pursuant to G.S. 1-240.

Pursuant to G.S. 1-240 the court entered an order making John W. Cowart an additional party defendant. He filed an answer denying negligence on his part in the operation of his automobile.

Plaintiff filed a reply admitting execution of the release, and pleading fraud and deceit in its procurement, and inadequacy of consideration.

Defendant filed a rejoinder denying the allegations of plaintiff's reply as to fraud and deceit and inadequacy of consideration.

On 16 August 1961 Hobgood, J., presiding over a special civil term of court in Mecklenburg County in the exercise of his discretion entered an order, on motion of defendant, directing that the issue raised as to the validity of the release be tried separately, and prior to the trial of the issues in respect to negligence and damages.

At the trial before Judge Patton this one issue was submitted to the jury, and answered as appears:

"Was the execution of the Release dated February 22, 1957, procured by fraud, as alleged in plaintiff's Reply filed in this case? "Answer: Yes."

From the judgment entered in accord with the verdict declaring the release null and void and setting it aside, defendant appeals.

*Kennedy, Covington, Lobdell & Hickman, by R. C. Carmichael, Jr., for defendant appellant.*

*Hedrick, McKnight & Parham, by Philip R. Hedrick for plaintiff appellee.*

PARKER, J.  Defendant's plea of a release is a plea in bar going to plaintiff's entire cause of action, and if established by proof, would defeat and destroy her action altogether. *McAuley v. Sloan,* 173 N.C. 80, 91 S.E. 701; *Bank v. Evans,* 191 N.C. 535, 132 S.E. 563; *Ward v. Heath,* 222 N.C. 470, 24 S.E. 2d 5; *Watkins v. Grier,* 224 N.C. 339, 30 S.E. 2d 223; *Gillikin v. Gillikin,* 248 N.C. 710, 104 S.E. 2d 861.

Judge Hobgood in the exercise of his discretion had the power under the circumstances here to enter an order that the plea in bar going to plaintiff's right to maintain her cause of action should be tried prior to trial on the merits of plaintiff's alleged cause of action. *Gillikin v. Gillikin, supra; DeLoache v. DeLoache,* 189 N.C. 394, 127 S.E. 419; *McAuley v. Sloan, supra.*

After the jury was impanelled and sworn the parties entered into these stipulations: One. On 22 February 1957 plaintiff had a claim against defendant arising out of a collision on 28 December 1956 between an automobile operated by defendant and an automobile operated by her husband, John W. Cowart, in which she was riding as a passenger. Two. On 22 February 1957 plaintiff and her husband executed the release pleaded by defendant as a bar to plaintiff's action.

The jury found by its verdict that the release was procured by fraud, as alleged in plaintiff's reply.

Defendant has one assignment of error: The trial court erred in denying his motion for judgment of nonsuit made at the close of all the evidence. Defendant in his brief states the question to be decided is this: "Should a nonsuit have been granted on the ground that there was not sufficient evidence of actionable fraud to take the case to the jury?"

The Court said in *Yerys v. Insurance Co.,* 210 N.C. 442, 187 S.E. 583: "An appeal from a judgment sustaining a plea in bar is not regarded as premature. *Royster v. Wright,* 118 N.C. 152, 24 S.E. 746; *Bethell v. McKinney,* 164 N.C. 71, 80 S.E. 162."

If the jury had answered the issue No, the judgment entered upon the verdict would have been a final judgment disposing of plaintiff's action, and undoubtedly she would have the right to appeal. The judgment here is not a final one disposing of the action, and presents the question whether defendant may appeal at once, or must he note his exception and appeal from the final judgment, if there is one against him. This question is not raised by plaintiff.

The judgment here is not a final judgment which disposes of the case as to all the parties, leaving nothing to be judicially determined between them in the trial court. Only the issue as to the release has been tried. Whether plaintiff was injured by the alleged negligence of the defendant remains for trial. No adverse adjudication has been

made which defendant cannot bring forward by an exception and appeal from a final judgment against him, if there should be one. The elimination of defendant's plea in bar cannot prejudice him in the subsequent trial of the issues of negligence and damages, nor does it destroy, or impair, or seriously imperil some substantial right of his.

The appeal here is fragmentary and premature. In consequence, it falls under the ban of the general rule forbidding fragmentary appeals, and must be dismissed. *Jenkins v. Trantham,* 244 N.C. 422, 94 S.E. 2d 311; *Veazey v. Durham,* 231 N.C. 354, 57 S.E. 2d 375; *Privette v. Privette,* 230 N.C. 52, 51 S.E. 2d 925; *Cole v. Trust Co.,* 221 N.C. 249, 20 S.E. 2d 54; *Yates v. Insurance Co.,* 176 N.C. 401, 97 S.E. 209; *Yates v. Insurance Co.,* (same case), 173 N.C. 473, 92 S.E. 356; *Chambers v. R. R.,* 172 N.C. 555, 90 S.E. 590; *Shelby v. R. R.,* 147 N.C. 537, 61 S.E. 377; *Martin v. Flippin,* 101 N.C. 452, 8 S.E. 345; *Arrington v. Arrington,* 91 N.C. 301; *Hines v. Hines,* 84 N.C. 122.

While this appeal must be dismissed as fragmentary and premature, we will nevertheless, as was done in *Burgess v. Trevathan,* 236 N.C. 157, 72 S.E. 2d 231, and in *Yates v. Insurance Co.,* 173 N.C. 473, 92 S.E. 356, exercise our discretionary power to express an opinion upon the question which defendant attempts to raise by his fragmentary and premature appeal.

Plaintiff's evidence is as follows: Her husband's automobile was damaged in the collision. He gave City Chevrolet Company a post-dated check for $205.14 to repair the damage. As a result of the collision the door handle and arm rest of the automobile in which she was riding struck her across the back. That night she suffered pain, and next morning went to the hospital. Dr. Page X-rayed her, gave her medicine for pain, and told her to go home. She went home, went to bed, and used a heat lamp. She has been to the hospital, to doctors, and she was not better when the release was signed. She has bought and taken medicine for pain.

A few days after the collision she and her husband were contacted by Robert Gardner, an adjuster for Nationwide Mutual Insurance Company, who was representing defendant. She and her husband talked with Gardner by telephone on several occasions. She and her husband saw Gardner on 22 February 1957, the day the release was signed, at her home. She testified: "He asked us if we were ready to settle up our claim and my husband had talked with him before that and on that same day before he come out there about my trouble, that I was still having a lot of pain, and he said that didn't make no difference because this wasn't concerning me any way. He told him that this wasn't concerning my injuries, that it was concerning the expense because my husband had told him about the check [postdated] and it

was getting up close to that time and we had doctor's and hospital bills and all that and he said that was just to pay his expense up to date."

In the conversation with Gardner in their home her husband itemized for him the expenses he had had. He had paid his niece $126.00 for staying seven weeks with his wife after the collision, $20.00 for going to the mountains for his niece and carrying her back, $49.00 for his niece's board while she was with his wife, cost of repair to his automobile $205.14, hospital expenses for his wife $50.25, Dr. Page's bill $30.00, a total amount of $480.39. The release recites the payment to plaintiff and her husband of the sum of $480.39.

Plaintiff further testified: "After we had gone over those items, we talked settling expenses my husband had been out. I didn't get anything. There wasn't anything paid to me. Of course, I signed the checks and the papers, but he said that wasn't concerning mine whatsoever. Mr. Gardner produced this paper I referred to. The first time I seen the paper it was all ready for our signature and that is all I noticed, was just the check marks for us to sign. It was filled out when he laid it on the table for me to sign. . . . I did not read that piece of paper before I signed it. He did not read it to me. As to why I signed that paper then, well I was taking him at his word, because I can read, but a lot of things I don't understand when I do read, and I took him at his word. . . ."

Her husband testified: "I don't know right off what else he did in regard to assuring me that he could settle my claim without settling hers. He went and made a phone call. . . . After he made the call, he hung up and suggested that we do what he just told me, pay my expenses and leave it open on my wife. Leave my wife's claim open."

Plaintiff's husband finished the 5th grade at school, but he cannot read very well.

Defendant states in his brief: "In the light most favorable to the plaintiff, the evidence shows that there was a false representation of a material fact which was relied upon by the plaintiff. However, the defendant contends that the evidence, even when taken in the light most favorable to the plaintiff, establishes as a matter of law that the plaintiff was not justified in relying upon the representations and that her reliance thereon was not reasonable."

The general principle that fraud vitiates every act applies to releases. Annotation 117 A.L.R., 1032 *et seq.*

The Court said in *Watkins v. Grier, supra:*

"An injured person, who can read, is under the duty to read a release from liability for damages for a personal injury before

signing it. Hence, where such a person signs a release without reading it, he is charged with knowledge of its contents, and he may not thereafter attack it upon the ground that at the time of signing he did not know its purport, unless his failure to read it was due to some artifice or fraud of, or chargeable to the party released."

"If a misrepresentation amounting to fraud is made as to any matter embraced in the release the instrument is vitiated as a whole, and not merely as to the matter to which the misrepresentation relates; every portion and clause of a release voidable for fraud in its inception is unenforceable and not binding." 76 C.J.S., Release, p. 651.

Mere inadequacy of consideration alone is insufficient to set aside a release. *Maynard v. R.R.,* 251 N.C. 783, 112 S.E. 2d 249. However, where there is inadequacy of consideration, but it is not gross, it may be considered in connection with other evidence in the case to determine the existence or not of fraud in procuring the release, but will not, standing alone, justify setting aside a release on the ground of fraud. But if the inadequacy be so gross and palpable as to shock the moral sense, it is sufficient evidence to be submitted to the jury on the issue relating to fraud. *Causey v. R. R.,* 166 N.C. 5, 81 S.E. 917, L.R.A. 1915E 1185, Ann. Cas. 1916C 707; *King v. R. R.,* 157 N.C. 44, 72 S.E. 801, 48 L.R.A. (N.S.) 450; *Knight v. Bridge Co.,* 172 N.C. 393, 90 S.E. 412; 76 C.J.S., Release, p. 656.

No question of ratification or estoppel is presented here for the very simple reason that defendant has neither *allegata* nor *probata* to such effect.

Plaintiff's evidence would permit, but not compel, a fair-minded jury to find from the evidence: One, that plaintiff's failure to read the release before signing it was due to Robert Gardner telling her that the release or paper wasn't concerning her injuries, but was just to pay her husband's expenses up to date. Two, that this was a representation or concealment of a material fact, which was untrue in fact and that Gardner knew it to be untrue. Three, that such a statement by Gardner was reasonably calculated to deceive plaintiff. Four, that such statement was made by Gardner with intent to deceive plaintiff and to influence her to sign the release. Five, and which did in fact deceive plaintiff, and that plaintiff actually relied upon the false representation of such material fact in the manner contemplated or manifestly probable, and thereby suffered damage by signing the release for an inadequate consideration, or no consideration. *Ward v. Heath, supra.*

Defendant in his brief admits that there was evidence of a false representation of a material fact which was relied upon by plaintiff, but

contends plaintiff as a matter of law was not justified in relying upon such representation, and her reliance was not reasonable. Such a contention is without merit. Our reply to such contention is this:

> "In *Gray v. Jenkins,* 151 N.C. 80, 65 S.E. 644, this Court said: 'The law does not require a prudent man to deal with everyone as a rascal and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract; that there must be a reliance on the integrity of man or else trade and commerce could not prosper.' " *Roberson v. Williams,* 240 N.C. 696, 83 S.E. 2d 811.

Defendant offered evidence tending to show there was no fraud or deceit in the procurement of the release. However, the conflicting evidence presented an issue of fact for the jury.

We are of opinion that the court was correct in submitting the case to the jury. The appeal must be dismissed as fragmentary and premature.

Appeal dismissed.

SHARP, J., took no part in the consideration or decision of this case.