WILLIE JORDAN MATTHEWS v. VIRGINIA COOK HILL AND MARVIN WOODROW CHILDRESS

No. 6819SC344

(Filed 18 September 1968)

1. **Torts § 7—— release from liability —— proof of matter in avoidance**
   Where plaintiff admits the execution of a release, he then has the burden to prove any matter in avoidance.

2. **Torts § 7—— release —— matter in avoidance —— inadequate consideration**
   Inadequacy of consideration alone is not sufficient to set aside a release, unless it be so gross and palpable as to shock the moral sense.

3. **Torts § 7; Cancellation and Rescission of Instruments § 10—— fraud in obtaining release —— sufficiency of evidence**
   In plaintiff's action to recover damages for personal injuries arising out of an automobile accident, the issue of an insurance agent's fraud in procuring a release from the plaintiff is properly nonsuited (1) when there is no evidence that the payments actually made under the terms of the release were, when compared to plaintiff's injuries, so grossly and palpably inadequate "as to shock the moral sense" and (2) when the evidence shows that the plaintiff was a mature woman with a grown daughter and grandchildren and that on the day she signed the release she had been to business school, had become ill and returned home, that she gave the insurance agent her version of the accident and thereafter signed, but did not

read, the release because she did not want to be bothered, with no evidence that plaintiff was under the influence of drugs when she signed the release.

**4. Torts § 7— execution of release — duty of injured party to read**

An injured person who can read is under a duty to read a release from liability for damages for a personal injury before signing it; hence, where such a person signs a release without reading it he is charged with knowledge of its contents and may not thereafter attack it upon the ground that at the time of signing he did not know its purport, unless his failure to read it was due to some artifice or fraud chargeable to the party released.

APPEAL by plaintiff from *Seay, J.,* at the 4 March 1968 Civil Session of CABARRUS Superior Court.

This is a civil action to recover damages for personal injuries sustained in an automobile collision which occurred on 16 January 1966 between cars operated by defendants. Plaintiff was riding as a passenger in one of the cars and alleged her injuries resulted from the actionable negligence of the defendants. Each defendant answered, denying his own negligence and alleging execution by plaintiff of a written release of all claims. Plaintiff replied, admitting signing an instrument on 19 January 1966 for a representative of one of the defendants, but alleging "that because of plaintiff's physical and mental condition resulting from the taking of medicine prescribed for her injuries, plaintiff did not know or understand the instrument which she signed," and that her signature was obtained by misrepresentation and fraud. Prior to trial plaintiff moved to amend her reply by striking therefrom the words "resulting from the taking of medicine prescribed for her injuries," which motion was allowed. In a pretrial conference the court, without objection, directed that the question or questions concerning the release be tried separately and in advance of the trial of the issues of negligence and damages. The case came on for trial before the court and jury upon the issue concerning the release and the validity thereof. At the conclusion of all the evidence each defendant moved for judgment on the plea in bar and for judgment of nonsuit of the entire action. The court allowed these motions and entered judgment, finding as a fact that plaintiff admitted signing the release and holding that there was no evidence sufficient to submit to the jury to show any fraud or fraudulent misrepresentations in its procurement or that plaintiff was lacking in mental capacity when she signed it. On these findings the court sustained the pleas in bar and dismissed the action. Plaintiff excepted and appealed.

*Williams, Willeford & Boger, by John R. Boger, Jr., for plaintiff appellant.*

*Helms, Mulliss & Johnston, by E. Osborne Ayscue, Jr., for defendant appellant Hill.*

*Hartsell, Hartsell & Mills, by William L. Mills, Jr., and Michael Koontz, for defendant appellee Childress.*

PARKER, J.

[1]   At the trial plaintiff admitted from the witness stand that the instrument which she signed on 19 January 1966 was the release as pleaded by defendants and that she had received certain monies therefor. By the terms of this instrument plaintiff released all claims resulting from the automobile accident referred to in her complaint. The execution of the release being admitted, the burden was then cast on plaintiff to prove any matter in avoidance. *Watkins v. Grier,* 224 N.C. 339, 30 S.E. 2d 223.

[2, 3]   There was no evidence that the agent who obtained plaintiff's signature on the release made any misrepresentations whatsoever. Plaintiff admits on this appeal that the only evidence of fraud in obtaining the release is the inadequacy, as plaintiff contends, of the consideration. Inadequacy of consideration alone is not sufficient to set aside a release, unless it be "so gross and palpable as to shock the moral sense." *Cowart v. Honeycutt,* 257 N.C. 136, 125 S.E. 2d 382. In the present case plaintiff did not allege in her reply inadequacy of consideration so gross as to amount to fraud. Even had she done so, the evidence would not support such an allegation. The consideration stated in the release was the sum of $30.00 and the promise to pay all of plaintiff's reasonable medical, surgical, nursing, and hospital expenses incurred within one year following the accident and caused by it, not exceeding a total of $2000.00. The uncontradicted evidence is that plaintiff received during the period from 19 January to 13 June 1966 ten different checks totaling $171.45, of which $141.45 was in reimbursement of her medical expenses. Each of these checks was made payable to plaintiff and was endorsed and negotiated by her. In addition, plaintiff was tendered a check dated 27 July 1967 made payable jointly to her, to the hospital, and to the clinic, in the amount of $991.90, in reimbursement of hospital and surgical expenses, which check was refused by her. There was evidence that as a result of the collision plaintiff received bruises to her knees, to her right arm, and a sore neck. Some six months after the collision, plaintiff also had surgery to one knee, giving rise to the tendered check in the amount of $991.90. However,

there was no evidence that plaintiff's injuries were so severe that the payments actually made under the terms of the release were, when compared with her injuries, so grossly and palpably inadequate "as to shock the moral sense." The trial court correctly held that the evidence was insufficient to permit submission to the jury of an issue as to fraud in procurement of the release.

[3]    We are also of the opinion that there was no evidence sufficient to submit to the jury an issue as to plaintiff's mental capacity at the time she signed the release. On this issue, the evidence when considered in the light most favorable to the plaintiff would tend to show the following: On Wednesday, 19 January 1966, three days after the accident, plaintiff had attended North State Business School in the morning. She began feeling real bad and left school about noon. She had pain in her legs, an earache, and an excruciating pain in the back of her head. She was coughing, feeling nauseated, and had a cold. From the school, she went to the hospital, where she saw the doctor, and then went to visit her friend, the defendant Virginia Hill, with whom she had been riding at the time of the accident and who was still in the hospital. She then went home, arriving about 2:00 p.m., and went immediately to bed. She was taking cough medicine and anacin and a prescription obtained from the hospital. She was in bed when the agent for the insurance company came by late in the afternoon. She answered the door when he knocked, thinking that he was the delivery boy from the drugstore from which she had ordered additional medicine. The plaintiff and the agent then went to plaintiff's bedroom where she returned to bed and he sat on a chair beside her bed. They talked about the accident which had occurred three days earlier. The agent wrote out a statement of what plaintiff told him about the accident and about her injuries, and she signed the papers at the agent's request. While the agent was there, plaintiff's daughter and son-in-law and their two small children came by for a visit and were introduced to the agent. Plaintiff admitted she signed the papers given to her by the agent but testified that she had not read them and did not know what she had signed. In explanation of her action, she testified: "Well, I could have cared less. I just didn't want to be bothered. I was so ill I just thought he would never leave." She also testified that she did not understand what she was signing. The doctor who treated plaintiff on the date of the accident on 16 January 1966 testified that on that date he found she had injuries to both knees, pain in the back and shoulders, but no broken bones, and that plaintiff was emotionally upset and nervous.

[4]    Even considering all of this evidence in the light most favorable to the plaintiff, it is not sufficient to permit submission to a jury of an issue as to her mental capacity at the time she signed the release. Plaintiff is a mature woman with a grown daughter and grandchildren. She attended business school. On the day in question she had been to school in the morning, had gone by the hospital to see the doctor and visit her friend, and had then gone home. Se was feeling bad and went to bed. There is no evidence that she was under the influence of any drug, and by her own motion she has deleted from her pleadings any allegation that her mental condition at the time resulted from the taking of medicine. She talked with the agent of the insurance company and gave him a coherent statement. She talked with her daughter and son-in-law. Her own statement that she signed the papers because she didn't want to be bothered, while certainly evidence of gross negligence on her part, falls far short of being evidence of mental incapacity. Her own affirmative answer in response to a leading question from her attorney as to whether she had sufficient ability to know the nature and extent of the papers she was signing is not sufficient, even when considered with all other evidence, to carry the issue to the jury. If that were so, then every person who could show that at the time he signed a legal document he had a headache, was suffering from a bad cold, and didn't want to be bothered, might avoid the consequences of his own act. An injured person, who can read, is under the duty to read a release from liability for damages for a personal injury before signing it. Hence, where such a person signs a release without reading it, he is charged with knowledge of its contents, and he may not thereafter attack it upon the ground that at the time of signing he did not know its purport, unless his failure to read it was due to some artifice or fraud chargeable to the party released. *Watkins v. Grier, supra.* In the present case there was no evidence of any fraud or artifice used to obtain plaintiff's signature on the release, and she is bound by her act in signing it.

It is desirable that potential tort liabilities be settled only when all parties concerned have had reasonable opportunity to ascertain the true extent of the injuries involved. It is also desirable that settlements be made promptly and with finality. These sometimes conflicting considerations confront the parties, and at times the courts, with certain dilemmas. *See* "Conclusiveness of Personal Injury Settlements: Basic Problems," 41 N.C.L. Rev. 665. The facts

in the case before us present insufficient grounds for disturbing the finality of the release.

The judgment appealed from is
Affirmed.

BROCK and BRITT, JJ., concur.