BRADY H. JOHNSON v. R. G. LOCKMAN AND PILOT LIFE INSURANCE COMPANY

No. 7822SC538

(Filed 1 May 1979)

Fraud § 5; Insurance § 44— insured's cancellation of health and disability policy —agent's misrepresentation of coverage—reasonableness of reliance—jury question

In an action to reinstate a health and disability insurance policy and to recover payments allegedly due under the policy which plaintiff cancelled as the result of a misrepresentation by defendant insurer's agent that his back condition was not covered by the policy, the evidence on motion for summary

Johnson v. Lockman

judgment presented a jury question as to whether plaintiff reasonably relied on the agent's misrepresentation when he could have discovered by reading the policy that his condition was covered by the policy, and summary judgment was improperly entered for defendant agent and defendant insurer.

APPEAL by plaintiff from *Hairston, Judge.* Judgment entered 20 March 1978 in Superior Court, IREDELL County. Heard in the Court of Appeals 7 March 1979.

Plaintiff seeks reinstatement of a health insurance policy which he cancelled as the result of alleged fraudulent misrepresentation by defendant, R. G. Lockman, acting as insurance agent of defendant, Pilot Life Insurance Company. Plaintiff seeks $11,500 as accrued payments due under the allegedly wrongfully cancelled policy, $189,000 for future payments due under the policy, and $100,000 punitive damages. Defendant Pilot Life answered averring that, because plaintiff should have known by reading his insurance policy that his condition was actually within the policy's coverage, it was not reasonable for plaintiff to have relied upon the representations of Lockman which were in fact contrary to what Lockman had been advised by Pilot Life. Defendant Pilot Life has not contested the existence of Lockman's agency on this appeal.

The matter was heard in the trial court on defendant's motion for summary judgment. The pleadings, interrogatories, depositions, and affidavits establish the following facts which are undisputed for purposes of this appeal: On 25 February 1971, plaintiff purchased Pilot Life health insurance policy No. H-166841 insuring plaintiff from loss due to sickness or injury at the rate of $500 per month from the date of disability until death. The application for that policy inquired:

"10. Have you ever been treated for or had any known indication that you have had or presently have any other disease or disorder of:

i. back or spine?"

Plaintiff's application contained a negative response. Nevertheless, plaintiff's own evidence indicates that he had suffered from a "catch" in his back on previous occasions and had, in fact, consulted a chiropractor for treatment of the problem.

The record indicates that prior to July of 1974, plaintiff suffered an injury to his back. He delayed a day or so before seeking treatment. He eventually was referred to the Miller Clinic in Charlotte and informed that surgery was necessary. Upon the advice of a physician and family friend, plaintiff attempted to contact his insurance agent to make sure that he was covered by the policy. Because his agent, Jack Annas, had recently left Pilot Life, plaintiff was put in touch with R. G. Lockman on 1 July 1974.

Plaintiff informed Lockman that he was inquiring as to his coverage for back surgery because he had been informed that surgery would be necessary to treat his condition. Lockman questioned plaintiff with respect to whether he previously had ever suffered any back trouble. He replied that he had experienced a "catch" in his back now and then, and that he had been to a chiropractor. Lockman noted that plaintiff had made no mention of any prior back condition in his insurance application. Lockman then said in substance that Johnson might not be covered by the policy, but that he would consult the company for a definite answer.

Lockman contacted plaintiff several weeks later, around 31 July 1974, and notified him that a response had been received from Pilot Life. Pilot Life's response outlined three alternative courses of conduct: (1) Correct the mistake by adding a rider to the policy, (2) Refund the premiums upon plaintiff's surrender of the policy or (3) "Since the policy is more than two years old, the statements contained in the application are incontestible and no unilateral action can be taken by the Company", which requires no conduct by either party. The incontestibility clause in the policy provides as follows:

"INCONTESTIBILITY: (a) After the policy has been in force two years during your lifetime (excluding any period during which you are disabled) it shall become incontestible as to the statements contained in the application."

In contrast, however, Lockman informed plaintiff that he had no coverage under the policy. Plaintiff, therefore, reasoned that it would be foolish to continue the policy, and Lockman agreed, then stated: "Don't hold me to this, but I will try to get you all the premiums you've paid in this policy back." Plaintiff responded, "Great day, Russ, that's—well, that's great. I'd appreciate it if

you can." Lockman said he'd find out from the home office, and a few days later, brought the check to plaintiff. At Lockman's request, plaintiff signed a paper which Lockman said was just to show he had received the money. In fact, the paper was a memo to Lockman dated 29 July 1974, which read in part:

> "In accordance with the policyholder's request to cancel his policy, we have done so and enclose the check for $1,084.60, representing the premiums paid. Please do not deliver the check unless Mr. Johnson fully understood the options given in my letter of July 18th. If we can be of any further service in this matter, please let us know."

At the bottom of the page was printed:

> "Dated 7-31-74. I fully understand the options explained to me."

Plaintiff's signature thereafter appears on the memo. He did not, however, read the memo before signing it. Lockman told him when he handed the paper to him for his signature, "I've got an appointment; I'm late already." Plaintiff subsequently learned that he was in fact entitled to coverage under the policy, and brought suit to reinstate the policy.

Defendants moved for summary judgment 16 January 1978. The motion was heard 20 March 1978 and the trial court entered judgment for defendants 21 March 1978 dismissing plaintiff's action. Plaintiff appeals.

*Bondurant & Lassiter, by T. Michael Lassiter, for plaintiff appellant.*

*Womble, Carlyle, Sandridge and Rice, by Allan R. Gitter and William C. Raper, for defendant appellants.*

MORRIS, Chief Judge.

Plaintiff assigns error to the entry of summary judgment for defendants on the ground that genuine issues of material fact remain to be resolved, *i.e.,* whether Lockman made a factual misrepresentation to the plaintiff, and if so, whether plaintiff reasonably relied upon that representation. Defendants essentially concede for purposes of their motion for summary judgment that a misrepresentation was made by defendant Lockman.

Therefore, the sole question for resolution in this matter concerns whether, as a matter of law and based upon the undisputed facts in this record, plaintiff reasonably relied upon the representations of Lockman. Plaintiff contends that the question of reasonable reliance is a question reserved for the jury; whereas, defendants maintain that plaintiff was charged with the duty to read the contract of insurance which he accepted, and his failure to do so will bar his right to reinstatement of the policy.

The essential elements of actionable fraud in North Carolina are these:

"(1) That defendant made a representation relating to some material past or existing fact; (2) that the representation was false; (3) that when he made it, defendant knew that the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that defendant made the representation with intention that it should be acted upon by plaintiff; (5) that plaintiff reasonably relied upon the representation, and acted upon it; and (6) that plaintiff thereby suffered injury." *Keith v. Wilder*, 241 N.C. 672, 675, 86 S.E. 2d 444, 446 (1955) (*quoting Cofield v. Griffin*, 238 N.C. 377, 78 S.E. 2d 131 (1953) ).

*Keith v. Wilder, supra*, also stands for the proposition that " 'one to whom a positive and definite representation has been made is entitled to rely on such representation if the representation is of a character to induce action by a person of ordinary prudence, and is reasonably relied upon.' " 241 N.C. at 675, 86 S.E. 2d at 447 (*quoting Gray v. Edmonds*, 232 N.C. 681, 62 S.E. 2d 77 (1950).). Therefore, there is no doubt, as defendants contend, that the law imposes upon the individual the duty to exercise ordinary prudence in relying upon persons with whom they conduct their business affairs. Nevertheless, whether such reliance is reasonable is ordinarily a question for resolution by a jury. *Fox v. Southern Appliances*, 264 N.C. 267, 141 S.E. 2d 522 (1965); *Johnson v. Owens*, 263 N.C. 754, 140 S.E. 2d 311 (1965); *Cowart v. Honeycutt*, 257 N.C. 136, 125 S.E. 2d 382 (1962); *Roberson v. Williams*, 240 N.C. 696, 83 S.E. 2d 811 (1954); *Gray v. Jenkins*, 151 N.C. 80, 65 S.E. 644 (1909); *Tuggle v. Haines*, 26 N.C. App. 365, 216 S.E. 2d 460 (1975), *cert. denied*, 288 N.C. 253, 217 S.E. 2d 681 (1975). For example, in *Cowart v. Honeycutt, supra*, the issue was

whether a release signed by plaintiff, and allegedly procured through the fraud of defendant's insurance company, barred plaintif's suit. The defendant in that action argued, as do defendants here, that "the evidence, even when taken in the light most favorable to the plaintiff, establishes as a matter of law that the plaintiff was not justified in relying upon the representations and that [his] reliance thereon was not reasonable." 257 N.C. at 141, 125 S.E. 2d at 386. Plaintiff, without reading it, had signed a document which released her rights to sue for personal injuries. She signed the release upon the representation that it only applied to past hospital and doctor's bills which were coming due for payment. The Court noted the general rule that there is a duty to read a release from liability unless the failure to read it was due to some artifice or fraud chargeable to the party released. The Court found that there was evidence which would permit a jury to find that plaintiff's failure to read was due to defendant's representations. In response to the defendant's contention that reliance was not reasonable, the Court determined that conflicting evidence presented a question for the jury, and quoted the Court in *Roberson v. Williams, supra:*

> "The law does not require a prudent man to deal with everyone as a rascal and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract; that there must be a reliance on the integrity of man or else trade and commerce could not prosper." 240 N.C. at 702, 83 S.E. 2d at 815 (*paraphrasing Gray v. Jenkins, supra.*)

Similarly, in *Johnson v. Owens, supra,* the question of reasonable reliance on alleged misrepresentations arose in connection with an action to recover damages where plaintiff purchased a house from defendant which had a defective heating system. Plaintiff alleged that because of defendant's actions and representations that the furnace was in good working condition, plaintiff purchased the house without first having the heating system inspected. The heating system was in fact defective beyond repair and required complete replacement. The language used by the Court, written in the context of a case involving misrepresentation in the sale of land, is instructive. We quote:

> "Just where reliance ceases to be reasonable and becomes such negligence and inattention that it will, as a matter of

law, bar recovery for fraud is frequently very difficult to determine. This case presents that difficulty. In close cases, however, we think that a seller who has intentionally made a false representation about something material, in order to induce a sale of his property, should not be permitted to say in effect, 'You ought not to have trusted me. If you had not been so gullible, ignorant, or negligent, I could not have deceived you.' Courts should be very loath to deny an actually defrauded plaintiff relief on this ground. When the circumstances are such that a plaintiff seeking relief from alleged fraud must have known the truth, the doctrine of reasonable reliance will prevent him from recovering for a misrepresentation which, if in point of fact made, did not deceive him. In such a case the doctrine is the specific remedy for a complainant who is, so to speak, malingering. A plaintiff who, aware, has made a bad bargrain should not be allowed to disown it; no more should a fraudulent defendant be permitted to wriggle out on the theory that his deceit inspired confidence in a credulous plaintiff." 263 N.C. at 758, 140 S.E. 2d at 314.

The Court then concluded that whether plaintiff reasonably relied upon the defendant's representations is a question of fact for the jury.

Defendants rely upon *Setzer v. Insurance Co.*, 257 N.C. 396, 126 S.E. 2d 135 (1962), for the proposition that defendant Lockman was under no obligation to inform the plaintiff of his available options under the insurance policy. As we explain below, that decision does not support defendants' position. In *Setzer*, plaintiff sued for the reformation of a credit life insurance policy procured through his creditor Statesville Production Credit Association. Plaintiff five times had borrowed from the credit association, and each time had applied for and received credit life insurance. Each policy, in addition to insuring plaintiff's life, provided indemnity coverage for the loss of one or both eyes, hands, or feet. Upon obtaining a sixth loan from the credit association, plaintiff again applied for credit life insurance just as he had done the previous five times. This time, however, the policy did not provide indemnity for loss of sight, hand, or feet. The lender made no mention of that fact. Plaintiff subsequently lost his right arm in a farm-

tractor accident and discovered the loss was not covered by the sixth policy.

The plaintiff in *Setzer* based his right to reformation upon silence as actionable fraud when defendant failed to inform him that coverage under the sixth policy differed from coverage under the five previous policies. The Court noted that the policy was not a renewal but an entirely new contract, and that "[i]t is a matter of common knowledge that insurance companies from time to time change the terms of their policies." 257 N.C. at 403, 126 S.E. 2d at 140. The Court then concluded that in order for silence under these facts to constitute actionable fraud, defendant must have violated some duty to speak arising out of a relationship of trust or confidentiality. No such relationship existed there and thus there was no duty to speak. In contrast, however, the case at bar involves an affirmative misrepresentation with respect to an existing policy, not the breach of a duty to disclose the terms of a new policy. Defendants also rely heavily on *McLain v. Insurance Co.*, 224 N.C. 837, 32 S.E. 2d 592 (1945). That decision held that, as a matter of law, plaintiff had proven no actionable fraud in the procurement of a release from double indemnity liability where her own evidence showed she failed to read the insurance policy. The language of that decision is in conformity with other decisions rendered by our Supreme Court, yet the result appears inconsistent. Although the decision has not been overruled, it has not been relied upon in recent decisions of that Court, and we believe should be read narrowly based on the particular facts of that case. We have been unable to reconcile that decision with the many decisions rendered both before and since that case which conclude that reasonable reliance is a question for the jury.

The case at bar is before this Court on an appeal from a motion for summary judgment. The determinative question is essentially whether the plaintiff exercised reasonable care in relying on the representations of defendant Lockman. The rule in North Carolina has become well settled that only in exceptional cases involving the question of reasonable care will summary judgment be an appropriate procedure to resolve the matter. See our discussion in the recent decision in *Gladstein v. South Square Assoc.*, 39 N.C. App. 171, 249 S.E. 2d 827 (1978). Even in cases in which there may be no dispute as to the essential facts, where reasonable men could differ with respect to whether a party

acted with reasonable care, it remains in the province of the jury to apply the reasonable man standard. *See Gladstein v. South Square Assoc., supra; Robinson v. McMahan,* 11 N.C. App. 275, 181 S.E. 2d 147 (1971), *cert. denied,* 279 N.C. 395, 183 S.E. 2d 243 (1971). Therefore, we conclude that based upon this record there is sufficient evidence upon which reasonable men could differ concerning whether plaintiff reasonably relied upon the representations of Lockman. Plaintiff is entitled to have the reasonableness of his reliance considered by a jury.

Reversed.

Judges CLARK and ARNOLD concur.