CARL D. JOHNSON AND WIFE, JO ANN JOHNSON v. PAUL C. HOLBROOK

No. 8523SC40

(Filed 15 October 1985)

**Fraud § 12.1— release signed without reading—summary judgment for defendant proper**

Summary judgment was properly granted for defendant in an action by one joint obligor on a promissory note against the other where the parties had negotiated a settlement of their claims against each other, an attorney hired by a third party prepared an identical release for each, the release was read aloud by the attorney to both parties, and plaintiff did not read the release because he did not have his glasses. Plaintiffs' allegations of fraud were insufficient because there were no assertions that the attorney or defendant intended to misrepresent the nature or contents of the release or that they did in fact misrepresent its nature or contents, the evidence was uncontradicted that the attorney read the entire release out loud, and plaintiff alleged that he

relied on the representations of the attorney and did not allege any fraud chargeable to defendant or that the attorney and defendant were involved in a common scheme. Plaintiff had a duty to read the document and failed to show any fraud by the defendant.

APPEAL by plaintiff from *Rousseau, Judge.* Judgment entered 24 August 1984 in Superior Court, ASHE County. Heard in the Court of Appeals 27 August 1985.

*John P. Siskind for plaintiff appellants.*

*Vannoy, Moore, Colvard & Triplett, by J. Gary Vannoy and Anthony R. Triplett, for defendant appellee.*

BECTON, Judge.

This is an action by one joint obligor on a $25,000 promissory note against the other for indemnification for one-half of the amount paid on the note. From a summary judgment in favor of the defendant based on a release signed by the plaintiff, plaintiff appeals.

Plaintiff, Carl D. Johnson, and defendant, Paul C. Holbrook, were engaged in a joint business venture. They borrowed $12,000 from the Northwestern Bank and $25,000 from J. Frank Pearson. They both signed a promissory note dated 20 April 1978 to Pearson, payable at eight percent interest per annum. Only Johnson signed the $12,000 note to the bank, and Holbrook gave Johnson two promissory notes, one for $4,000 and one for $2,000, for Holbrook's one-half interest in the use of the $12,000 loan proceeds. On 21 January 1982, a judgment on the Pearson note was entered against Johnson and his wife in favor of Esther Pearson, the executrix of J. Frank Pearson's estate.

On 19 December 1983, Johnson, Holbrook, and William Mitchell, an attorney for Northwestern Bank, met at Mr. Mitchell's office in order to resolve the bank's claim for the $12,000 note and other disputes between Johnson and Holbrook regarding their past financial transactions. Johnson and Holbrook met alone for some time and then called in Mitchell to reduce to writing the settlement between Johnson and Holbrook. According to the affidavit of Johnson, Johnson agreed to release Holbrook from his obligation for one-half of the $12,000 bank loan, by releasing all claims to the $4,000 and $2,000 notes made by Holbrook to John-

son, in exchange for $6,000 in the form of a check and some credits. Johnson alleged in his affidavit that, because he did not have his glasses with him and could not read the documents, he relied on Mitchell's statements as to the purpose of the release. Mitchell was not representing either party to the release, and he received no payment for his services from Johnson or Holbrook.

On 6 January 1984, Johnson filed his Complaint in this action. Holbrook answered and raised the release as an affirmative defense and bar to Johnson's action. Holbrook moved for summary judgment, supported by the affidavits of Holbrook and Mitchell. In each of these affidavits, the affiant indicates that the release was read aloud by Mitchell to both Johnson and Holbrook. The affidavit of Mitchell reads in part as follows:

I inquired of both men if this agreement was a complete and final settlement of everything between the two parties and was advised by each that it was;

I proceeded to dictate in the presence of both men, what I considered to be an absolute, complete and final release of all claims as I knew both of these men had been involved together in considerable ventures over the past fifteen (15) or twenty (20) years;

I dictated one release for both of the parties and reversed the names and amounts so that there was an identical release for each.

The affidavit of Holbrook reads in part:

This affiant and Carl D. Johnson requested W. G. Mitchell to prepare a release reducing their agreement to writing and resolving all prior business transactions;

Said releases were dictated by W. G. Mitchell in the presence of this affiant and Carl D. Johnson and thereafter were signed by the affiant and Carl D. Johnson in the presence of Zelma C. Goforth, a Notary Public.

None of the sworn statements in either of these affidavits is denied by Johnson. Instead, he asserts only that he signed the release without reading it himself because, being without his glasses, he relied on Mitchell's oral statement to him that "the

paper was for the purpose of releasing Mr. Holbrook of both the
$4,000.00 Note and the $2,000.00 Note . . . ."

Summary judgment under Rule 56 of the North Carolina
Rules of Civil Procedure should be granted when there is no gen-
uine issue of material fact and only issues of law remain. *Kessing
v. Nat'l Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). Tak-
ing the facts in a light most favorable to Johnson, the nonmovant
in this case, the allegations of fraud and misrepresentation are in-
sufficient as a matter of law to defeat the release signed by
Johnson. Therefore, summary judgment was proper.

Johnson admitted executing the release in exchange for
valuable consideration. Thus, it is incumbent upon him "to prove
any matter in avoidance." *Carder v. Henson*, 22 N.C. App. 318,
319, 206 S.E. 2d 308, 309 (1974); *Caudill v. Chatham Manufacturing
Co.*, 258 N.C. 99, 128 S.E. 2d 128 (1962). Johnson contends that he
signed the release in reliance on statements of the attorney,
Mitchell. Apparently, Johnson's argument is that he was fraudu-
lently induced to sign the release. This argument fails on the
pleadings for two reasons. First, there are no allegations in the
record or in the briefs that would be sufficient to make out a
*prima facie* case of fraud: there are no assertions that Mitchell or
Holbrook intended to misrepresent the nature or contents of the
release or that they did, in fact, misrepresent *its* nature or con-
tents. The facts, taken in a light most favorable to Johnson, show
only that Mitchell told him that the document would release
Holbrook from his obligations under the $2,000 and $4,000 notes.
This is a true representation. There is no allegation that Mitchell
represented that the release would preserve Holbrook's other
obligations. The language of the release clearly provides other-
wise, and the evidence is uncontradicted that Mitchell read the
entire release *out loud to both* Johnson and Holbrook. The docu-
ment was notarized and reads as follows:

### RELEASE OF ALL CLAIMS

THIS INDENTURE WITNESSETH that in consideration of
the sum of $6,000.00, the receipt of which is hereby acknowl-
edged, CARL D. JOHNSTON, for himself, his heirs, successors
and assigns, does hereby release and forever discharge PAUL
HOLBROOK, and any other person, firm or corporation charged

or chargeable with responsibility or liability, their heirs, representatives and assigns, from *any and all claims for indebtedness by reason of any prior transactions whatsoever, including joint ventures, notes, or other evidences of indebtedness, whether the same are surrendered to the undersigned or not.*

This 19th day of December, 1983.

/s/ Carl D. Johnston (SEAL)

(emphasis added).[1]

Johnson claims that he believed the release related only to the $2,000 and $4,000 notes from Holbrook to Johnson. Nonetheless, Johnson had no right to rely on Mitchell's alleged representations in this case. Johnson had the duty to read what he signed, or, if he could not do so because he did not have his glasses, to postpone the signing until he obtained his glasses. In *Matthews v. Hill*, 2 N.C. App. 350, 163 S.E. 2d 7 (1968), the plaintiff had been injured in an automobile accident. She signed a release "because she didn't want to be bothered." *Id.* at 354, 163 S.E. 2d at 9-10.

> An injured person, who can read, is under the duty to read a release from liability for damages for a personal injury before signing it. Hence, where such a person signs a release without reading it, he is charged with knowledge of its contents, and he may not thereafter attack it upon the ground that at the time of signing he did not know its purport, unless his failure to read it was due to some artifice or fraud chargeable to the party released. *Watkins v. Grier, supra.* In the present case there was no evidence of any fraud or artifice used to obtain plaintiff's signature on the release, and she is bound by her act in signing it.

*Id.; see Watkins v. Grier*, 224 N.C. 339, 30 S.E. 2d 223 (1944). In the case at bar, at best, Johnson revealed the existence of a misunderstanding. At worst, he has demonstrated his own negligence in signing the document without reading it himself. Johnson is a literate businessman and is charged with knowledge of the contents of the release he signed. *See Beeson v. Moore*, 31

---

1. Everywhere else in the record and briefs, "Johnston" appears as "Johnson."

N.C. App. 507, 229 S.E. 2d 703 (1976), *disc. rev. denied*, 291 N.C. 710, 232 S.E. 2d 203 (1977); *Carder*.

The second reason why fraud has not been pleaded sufficiently is that Johnson allegedly relied on the representations of Mitchell, not the defendant Holbrook. Johnson has not alleged any fraud chargeable to Holbrook, or that Mitchell and Holbrook were involved in a common scheme. In fact, the evidence shows that Johnson and Holbrook both requested Mitchell to assist them and that Mitchell was neither involved in the negotiations nor paid by either Johnson or Holbrook. The alleged fraud must be chargeable to the party released. *Matthews*.

Johnson relies on *Johnson v. Lockman*, 41 N.C. App. 54, 254 S.E. 2d 187, *disc. rev. denied*, 297 N.C. 610, 257 S.E. 2d 436 (1979) for the proposition that whether it is reasonable to fail to read a document before signing a release is a factual question for a jury. *Johnson* is easily distinguished. In *Johnson*, the alleged misrepresentation was made by the defendant's agent, not a third party. In addition, the plaintiff claimed that the agent falsely represented that the plaintiff's insurance policy did not cover his back condition. In the case at bar, Johnson does not deny that Mitchell read the release to Johnson. The language of the release is clear and unequivocal.

In summary, Johnson failed to satisfy his burden of establishing a *prima facie* case of fraud or artifice in order to avoid the release. Johnson admits that he voluntarily signed the release, and he failed to show any fraud by the defendant Holbrook. Johnson had a duty to read the document, and, in any event, failed to deny that it was read to him. There is no genuine issue of material fact to be resolved and summary judgment was appropriate.

For the reasons set forth above, we

Affirm.

Judges WEBB and MARTIN concur.