North Carolina Gen. Stat. § 97.2(6) defines an "injury" to include an injury to the back which arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned. Thus, if the back injury is the direct result of a specific traumatic incident, North Carolina Gen. Stat. § 97.2(6) construes "injury by accident" to include any disabling physical injury to the back arising out of and causally related to such incident. The meaning of "specific traumatic incident" has been well defined by our appellate courts: (1) The use of the words "specific" and "incident" mean that the trauma must not have developed gradually but must have occurred at a cognizable time, Bradley v. E.B.Sportswear, Inc., 77 N.C. App. 450 at p. 452, 335 S.E.2d 53, at p. 53 (1985); (2) "judicially cognizable time" does not mean ascertainable on an exact date but rather means that the term "should be read to describe a showing by plaintiff which enables the Industrial Commission to determine when, within a reasonable time period, the specific injury occurred," Fish v.Steelcase, Inc., 116 N.C. App. 703 at p. 708, 449 S.E.2d 233
(1994); and (3) "specific traumatic incident" is not limited to an instantaneous occurrence, but rather, the evidence needs to show events which occurred contemporaneously during a cognizable time period, Richards v. Town of Valdese, 92 N.C. App. 222
at p. 225, 374 S.E.2d 116 (1988).
Here the evidence is clear that plaintiff was injured during the middle of April, 1995, as a result of the jarring to his back caused by driving a motor grader without a suspension system over rough agricultural fields while test driving a new mower.
Dr. Ira Hardy II, a neurologist and plaintiff's primary treating physician, causally related plaintiff's disc protrusion and subsequent disc extrusion at L5-S1 to the series of jarrings to plaintiff's back during the period he was testing the new mower on the old motor grader.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as
 STIPULATIONS
1. On the date of plaintiff's alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. A set of exhibits attached to the parties' Pre-Trial Agreement consisting of Industrial Commission forms, and medical records from Aulander Family Physicians, Ira M. Hardy II, Eastern Radiologist, Inc., Colonial Chiropractic Clinic, and Pitt County Memorial Hospital are admitted into evidence.
4. Plaintiff's "Answers to Defendant's First Set of Interrogatories and Request for Production of Documents", marked as "Stipulated Exhibit Number Two", is admitted into evidence.
5. Defendant's "Answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents", marked as "Stipulated Exhibit Number Three", is admitted into evidence.
6. A transcript of plaintiff's recorded statement, marked as "Stipulated Exhibit Number Four", is admitted into evidence.
7. Plaintiff's "Cutting Schedule" marked as "Stipulated Exhibit Number Five", is admitted into evidence.
8. An Industrial Commission Form 19, marked as "Stipulated Exhibit Number Six", is admitted into evidence.
9. An Industrial Commission Form 28, marked as "Stipulated Exhibit Number Seven", is admitted into evidence.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 35 year old resident of Hertford County. He had been employed with the defendant-employer, a heavy machinery manufacturer, for approximately 12 years and had worked for the previous owner of the defendant-employer for five to six years.
2. At the time of his injury, plaintiff worked in the Research and Development Department which consisted of two employees — plaintiff and Ronnie Brown — , where his responsibilities included designing, modifying, and testing new products, such as forklifts, tobacco harvesters, peanut combines, cutters for motor graders, and small brush cutters for tractors. This work required plaintiff to draft, sketch, weld, and run machines. In addition to designing new products, plaintiff tested them.
3. On 6 March 1995, plaintiff and Mr. Brown began testing a new flail mower along roads and in fields. The testing continued through early May 1995. The mower was attached to a motor grader. The motor grader, which was approximately twenty years old, had no suspension and its seat was mounted on a heater. The seat and operating controls were positioned so that the grader operator was required to sit on the front of the seat, without back support and reach forward to operate the controls.
4. On the 6th and 7th of March, 1995, plaintiff operated the grader on State-maintained roads which were graded and smooth, mowing roadside vegetation. During this time, plaintiff experienced no back difficulty. Thereafter, plaintiff began testing the mower on farmland, mowing field edges between four and eight hours per day, at least four of which were continuous. After a one-hour lunch break, he often drove continuously for another two to three hours. To mow the field edges, plaintiff operated the grader across fields, some of which had trenches or raised rows where crops had been planted. When mowing field edges, the grader jerked upwards and downwards and rocked side to side. Plaintiff began to experience back discomfort in the middle of April while testing the mower in rough fields.
5. Plaintiff's back pain began worsening on or about 11 April 1995, when he was operating the mower on the rougher terrain of a tobacco field. Prior to that time, in March, his back was "pretty good, it wasn't that bad, it didn't bother [him] none at all."
6. Plaintiff telephoned his physician, Dr. J. Fred Saunders, around the middle of April and asked him if there was something that the doctor could prescribe to relieve some of the back pain which he was experiencing. Dr. Saunders told him to take Alleve. Throughout the latter half of April, plaintiff's back ached and stiffened while operating the motor grader.
7. Plaintiff had previously experienced problems with left-sided low back pain for which he sought treatment sporadically in 1992 and once in May of 1994. These symptoms had resolved with minimal treatment.
8. Plaintiff continued operating the grader, testing the mower until 4 May 1995. After mid-April, 1995, Plaintiff continued experiencing aching and tightening of his back while operating the grader. The only change in his symptoms occurred during late April and early May when he began to experience an aching or throbbing sensation in his hip.
9. The stiffness in plaintiff's back after April 11, 1995, made it difficult for him to stand erect. When he dismounted the grader, he would stand in a bent-over position. Plaintiff was able to straighten his back by pulling against the side of the motor grader. After pulling himself erect and walking about, his symptoms would improve.
10. Plaintiff continued operating the motor grader until 4 May 1995. Between 6 March 1995 and 4 May 1995, plaintiff operated the motor grader for a total of two hundred hours.
11. On 8 May 1995, plaintiff was at home. When he bent over to put on his shoes, he felt a searing pain that extended into his right leg and rendered him unable to return to a straight position. Plaintiff telephoned defendant and stated that he would be unable to work that day. Later that day, plaintiff presented to his family physician, Dr. Fred Saunders.
12. On 10 May 1995, plaintiff presented to Dr. Ira M. Hardy II, a neurosurgeon, upon referral from Dr. Saunders. On 25 May 1995, Dr. Hardy performed surgery on plaintiff's back to repair a partially ruptured disk. The surgery performed was an L5-S1 laminectomy, partial fasciectomy and foraminotomy with an excision of an extruded disc.
13. The surgery performed by Dr. Hardy was a reasonable and necessary response to plaintiff's injury.
14. Dr. Hardy, a neurosurgeon who performed surgery on and treated plaintiff for his back injury beginning May 10, 1995, opined that the jarring plaintiff sustained from his driving the motor grader without a suspension system over rough agricultural land probably caused the protrusion in a preexisting degenerative disc at L5-S1, and when plaintiff bent over to put on his shoes, the disc extruded as a result of the protrusion.
15. Plaintiff's back pain during the period from 11 April 1995 to 4 May 1995 resulted from a protruded disc at L5-S1. The protrusion of plaintiff's L5-S1 disc was caused by the jarring of his body that occurred during the period that he operated the motor grader over rough terrain from April 11, 1995, through May 3, 1995. On 8 May 1995, plaintiff bent over to put on his shoes. The act of bending over to put on his shoes caused a rupture of his already protruded L5-S1 disc. The rupture or extrusion of the L5-S1 disc was a direct and natural consequence of the disc protrusion which resulted from the work assigned. Plaintiff's disc rupture required surgery on 25 May, 1995.
16. As a result of his back injury, plaintiff was incapable of working for defendant or any other employer from 8 May 1995 through 16 July 1995. On 17 July 1995, plaintiff returned to work for defendant earning wages equal to or greater than the wages he earned prior to 8 May 1995.
17. Plaintiff reached maximum medical improvement on 29 November 1995. As a result of his herniated disc and the 25 May 1995 surgery, plaintiff sustained a fifteen percent permanent impairment of his back.
18. At the time that plaintiff became temporarily totally disabled on May 8, 1995, plaintiff was earning an average weekly wage of $460.00, rendering a compensation rate of $306.67 per week.
 ***********
Based on the foregoing findings of fact and stipulations, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury as a result of a specific traumatic incident of the work assigned causing his L5-S1 disc to protrude and subsequently rupture, necessitating surgery, and resulting in disability arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6);Fish v. Steelcase, Inc., 116 N.C. App. 703 (1994);Richards v. Town of Valdese, 92 N.C. App. 222 (1988).
2. Plaintiff sustained an injury between April 11, 1995, and May 4, 1995, a "judicially cognizable time", as a result of a specific traumatic incident which was contemporaneous with the plaintiff's severe jarring which occurred as he drove a suspensionless motor grader over rough agricultural fields for numerous hours while testing a new mower attached thereto. N.C. Gen. Stat. § 97-2(6); Fish v. Steelcase, Inc.,116 N.C. App. 703, 449 S.E.2d 233 (1994); and Richards v. Town ofValdese, 92 N.C. App. 222, 374 S.E.2d 116 (1988).
3. Plaintiff sustained permanent partial disability as well as temporary total disability for which he is entitled to recover benefits from the defendant. N.C. Gen. Stat. §§ 97-29 and 31(23).
4. Plaintiff is entitled to have defendant provide all medical compensation reasonably necessary as a result of the subject injury from a specific traumatic incident to the extent it tends to effect a cure, give relief or lessen his disability, including the surgery performed by Dr. Ira Hardy II. N.C. Gen. Stat. §§ 97-25; 97-2(19). Little v. Penn VentilatorCompany, 317 N.C. 206, 345 S.E.2d 204 (1986); Hyler v.GTE Prods. Co., 333 N.C. 258, 425 S.E.2d 698 (1993).
5. Plaintiff is entitled to compensation at the rate of $306.67 per week for periods of disability resulting from the subject injury or reasonably necessary treatment of it. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $306.67 per week, beginning 8 May 1995 and continuing until 17 July 1995. Such amount which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in paragraph 3.
2. Defendant shall pay plaintiff in a lump sum permanent partial disability compensation at the rate of $306.67 per week for a total of 45 weeks, subject to the attorney fee approved in paragraph 3.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid directly to him by the defendant in a lump sum as a deduction from that owed the plaintiff under paragraphs 1 and 2 above.
4. Defendant shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of his compensable injury when bills for same have been submitted to defendant and approved pursuant to procedures established by the Commission.
5. Defendant shall bear the costs of this proceeding, and shall pay Dr. Fred Saunders an expert witness fee of $155.00, and Dr. Ira M. Hardy II an expert witness fee of $265.00.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ COY M. VANCE COMMISSIONER
DISSENTING:
S/ ______________ LAURA K. MAVRETIC
 Filed Date: 7/29/97